No. 22-13340

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

SEDONA PARTNERS LLC,

*Plaintiff-Appellant*,

and

ABLE MOVING & STORAGE, INC.; ARPIN INTERNATIONAL GROUP, INC.; CARTWRIGHT INTERNATIONAL VAN LINES, INC.; COLEMAN AMERICAN MOVING SERVICES, INC.; DEWITT COMPANIES LIMITED, LLC; HILLDRUP COMPANIES, INC.; J.K. MOVING & STORAGE INC.; NEW WORLD INTERNATIONAL, LTD.; PARAMOUNT TRANSPORTATION SYSTEMS; PAXTON VAN LINES, INC.; AND WESTERN EXPRESS FORWARDING, LLC,

*Defendants-Appellees*.

Appeal from the United States District Court for the Southern District of Florida

Case No. 1:20-cv-23242-BB (Hon. Beth Bloom)

---

## APPELLANT'S OPENING BRIEF

---

JUSTIN T. BERGER (CA 250346)
jberger@cpmlegal.com
SARVENAZ J. FAHIMI (CA 226148)
sfahimi@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000

ADAM T. RABIN (SBN 985635)
arabin@rkjlawgroup.com
HAVAN M. CLARK (SBN 1026390)
hclark@rkjlawgroup.com
**RABIN KAMMERER JOHNSON**
1601 Forum Pl, #201
West Palm Beach, FL 33401
Telephone: (561) 659-7878

*Attorneys for Plaintiff-Appellant Sedona Partners LLC*

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT (CIP)**

Sedona Partners, LLC _vs._ Able Moving and Storage, Inc., et al. Appeal No. 22-13340

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed.  Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.**  In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

_(please type or print legibly)_:

No such subsidiary, conglomerate, affiliate, parent corporation, or publicly held

corporation that owns 10% or more of the party's stock exists to disclose.

Rev.: 12/20

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This matter warrants oral argument. In dismissing Relator Sedona Partners LLC's Second Amended Complaint with prejudice, the District Court ignored hundreds of specific allegations supporting Relator's claims because they were based on materials obtained after the commencement of discovery. The District Court improperly relied on an unpublished opinion of this Court, *Bingham v. HCA Inc.*, 783 F. App'x 868 (11th Cir. 2019), as the pivotal basis for its decision without separately determining that it is persuasive. Affirming the District Court's order would diverge from other well-reasoned authority—both in the Eleventh Circuit and other jurisdictions—holding that plaintiffs may use materials produced after the commencement of discovery in an amended complaint. Lastly, affirming would mean allowing a widespread fraud again the American taxpayer to go unremedied.

## **TABLE OF CONTENTS**

**Page No.**

JURISDICTIONAL STATEMENT ....................................................... viii

STATEMENT OF THE ISSUES ............................................................1

STATEMENT OF THE CASE ...............................................................1

I.    Statutory Background .............................................................1

II.   Factual Background ................................................................2

    A.    The Federal Centralized Household Goods Traffic
        Management Program and the "America-First" Policy..............2

    B.    The Defendants' Scheme ...........................................................5

        1.    Part One: Submission of Low-Ball Bids .........................5

        2.    Part Two: Submission of Fraudulent Flag Waivers ........5

III.  Procedural Background ...........................................................7

    A.    Discovery and Relator's Informal Investigation........................7

    B.    Defendants' Motions to Dismiss and Dispositions Below .........8

        1.    Order on Defendants' Motion to Dismiss Relator's
            First Amended Complaint ................................................8

        2.    Order on Defendants' Motion to Dismiss Relator's
            Second Amended Complaint and Motion for Leave to
            File a Third Amended Complaint...................................10

IV.   Standard of Review ..............................................................14

SUMMARY OF THE ARGUMENT ....................................................15

ARGUMENT .......................................................................................16

I.    The District Court Erred in Relying on the Non-Precedential
    *Bingham* to Strike Materials Obtained After the Commencement
    of Discovery ........................................................................16

A.    The District Court Erred in Treating *Bingham* as Binding Authority ....................................................................................16

B.    *Bingham* Was Wrongly Decided .............................................20

        1.    *Bingham* Did Not Set Forth Authority for Striking Discovery Materials........................................................20

        2.    There Is No Basis Under Rule 12(f) to Strike Information Obtained After the Commencement of Discovery........................................................................23

        3.    Rule 9(b) Does Not Warrant Striking Information Obtained After the Commencement of Discovery .........27

C.    The District Court Failed to Address Case Law Contrary to *Bingham* ....................................................................................29

D.    As a Matter of Public Policy, Discovery Materials Should Not Be Stricken in False Claims Act Cases.............................33

II.    The District Court Erred in Striking Materials Obtained from a Non-Party Outside of Discovery ........................................................35

CONCLUSION .......................................................................................38

# TABLE OF CITATIONS

Page No(s).

**Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...............................................................................14

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)...............................................................................14

\* *Bingham v. HCA Inc.*
  783 F. App'x 868 (11th Cir. 2019) ............................................. passim

*Braden v. Wal-Mart Stores, Inc.*
  588 F.3d 585 (8th Cir. 2009) ................................................................27

*Branch Banking & Tr. Co. v. Lichty Bros. Constr., Inc.*
  488 F. App'x 430 (11th Cir. 2012) ......................................................15

*Bullock v. United States*
  655 F. App'x 739 (11th Cir. 2016).......................................................18

*California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*
  217 F. Supp. 2d 1028 (C.D. Cal. 2002) ..............................................26

*Cruz v. Bank of New York Mellon*
  No. 12-CV-00846-LHK, 2012 WL 2838957 (N.D. Cal. July 10, 2012)............25

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*
  341 F. App'x 487 (11th Cir. 2009)........................................................29

*Darryl Battle, et al. v. CLI Atlas Deerwood LLC, et al.*
  No. EDCV202358JGBSPX, 2021 WL 3616108 (C.D. Cal. June 24, 2021).......30

*Fabing v. Lakeland Regional Medical Center, Inc.*
  No. 8:12-cv-2624-T-33MAP, 2013 WL 593842 (M.D. Fla. 2013) ...................24

*Grimm v. City of Portland*
  971 F.3d 1060 (9th Cir. 2020) ................................................... 19, 20

*Hall v. Carnival Corp.*
  536 F. Supp. 3d 1306 (S.D. Fla. 2021) ................................................24

*Haynes v. JPMorgan Chase Bank, N.A.*
   466 Fed. Appx. 763 (11th Cir. 2012)..................................................29

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*
   641 F.3d 1259 (11th Cir. 2011) .........................................................15

*In re BP Lubricants USA Inc.*
   637 F.3d 1307 (Fed. Cir. 2011) .........................................................27

* *McNamara v. Gov't Emps. Ins. Co.*
   30 F.4th 1055 (11th Cir. 2022) .................................................. 16, 20

*McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*
   423 F.3d 1256 (11th Cir. 2005) ...........................................................2

*Mills v. Foremost Ins. Co.*
   511 F.3d 1300 (11th Cir. 2008) .........................................................14

*Paez v. Mulvey*
   915 F.3d 1276 (11th Cir. 2019). ........................................................14

*Panola Land Buyers Ass'n v. Shuman*
   762 F.2d 1550 (11th Cir. 1985) .........................................................34

*Polansky v. Exec. Health Res. Inc*.
   17 F.4th 376 (3d Cir. 2021), *cert. granted sub nom. United States ex rel.
   Polansky v. Exec. Health Res., Inc.*, 142 S. Ct. 2834 (2022)..............35

*Ray v. McCullough Payne & Haan, LLC*
   838 F.3d 1107 (11th Cir. 2016) .........................................................17

* *Remmes v. Int'l Flavors & Fragrances, Inc.*
   453 F. Supp. 2d 1058 (N.D. Iowa 2006)............................................31

*Select Auto. Mgmt., LLC v. Fid. Three, Inc.*
   No. 8:07-CV-519-T-24 EAJ, 2007 WL 9723895 (M.D. Fla. June 1, 2007).......26

*Sifonte v. Fonseca*,
   No. 1:21-CV-20543, 2021 WL 8972153 (S.D. Fla. Sept. 29, 2021)..................18

*Tracfone Wireless, Inc. v. Access Telecom, Inc.*
   642 F. Supp. 2d 1354 (S.D. Fla. 2009) ..............................................24

*United States ex rel. Dildine v. Pandya*
    389 F. Supp. 3d 1214 (N.D. Ga. 2019) ..............................................24

\* *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*
    No. 1:11-cv-962-WSD, 2013 WL 2303768
    (N.D. Ga. May 17, 2013) ........................................ 18, 30, 31

*United States ex rel. Galmines v. Novartis Pharm. Corp.*
    88 F. Supp. 3d 447 (E.D. Pa. 2015) ....................................32

*United States ex rel. Keeler v. Eisai, Inc.*
    568 F. App'x 783 (11th Cir. 2014)......................................22

*United States ex rel. Knapp v. Calibre Sys., Inc.*
    No. 2:10-cv-4466-ODW (JCGx), 2012 WL 1577420
    (C.D. Cal. May 4, 2012) ...................................................32

*United States ex rel. Totten v. Bombardier Corp.*
    286 F.3d 542 (D.C. Cir. 2002) ...........................................2

*United States ex rel. Underwood v. Genentech, Inc.*
    720 F. Supp. 2d 671 (E.D. Pa. 2010) ..................................37

*United States ex. rel. Maersk Line, Ltd. v. Accelerated Intl. Forwarders, et al.*
    Case No. 1:21-dv-23908-DPG, Doc. 1 (Nov. 5, 2021) ......................................37

\* *United States State of Fla. ex rel. Bingham v. HCA, Inc.*
    No. 13-23671-CIV, 2016 WL 6027115 (S.D. Fla. Oct. 14, 2016)......................21

*United States v. Izurieta*
    710 F.3d 1176 (11th Cir. 2013) ..........................................17

*United States v. Marshall Med. Ctr.*
    No. 12-CV-0098-JAM, 2015 WL 2235461 (E.D. Cal. May 12, 2015)..............32

*United States v. SouthEast Eye Specialists, PLLC*
    570 F. Supp. 3d 561 (M.D. Tenn. 2021)...................................... 25, 37

*Universal Health Servs., Inc. v. United States*
    579 U.S. 176 (2016)................................................................2

**Rules and Statutes**

31 U.S.C. § 3130(d)(4)..........................................................................34

31 U.S.C. § 3729(a)(1)(A) .................................................................1, 6

31 U.S.C. § 3729 (a)(1)(B) ................................................................1, 6

31 U.S.C. § 3729(b)(1)............................................................................1

31 U.S.C. § 3730(b) ...............................................................................2

46 C.F.R. Part 381...............................................................................10

46 U.S.C. § 1241(b) ............................................................................10

46 U.S.C. § 55302(b) ..........................................................................10

46 U.S.C. § 55305 ...............................................................................10

Fed. R. Civ. P. 11 ................................................................................34

Fed. R. Civ. P. 12(f) ...........................................................................24

**Other Authorities**

14 FAM 616.1(a)..............................................................................4, 10

14 FAM 616.1(a)(1)..............................................................................11

14 FAM 616.2-2................................................................................4, 10

5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) ........................................24

HTOS § 5.3.1 ...................................................................................4, 10

S. Rep. No. 99-345, *reprinted in* 1986 U.S.C.C.A.N. 5266 ...................2

## **JURISDICTIONAL STATEMENT**

Relator appeals from a Final Order Adopting Magistrate Judge's Report and Recommendations and Denying Motion for Leave to File Third Amended Complaint, by which Relator's Second Amended Complaint was dismissed in its entirety and with prejudice. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and § 1345, as well as 31 U.S.C. § 3730(b) and § 3732(a). The judgment of the District Court was entered September 9, 2022. Doc. 265.[1] Relator timely filed a notice of appeal on October 3, 2022. Doc. 266. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] References to the record are to document numbers and page numbers, pursuant to 11th Circuit Rule 28-5.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in striking from an amended complaint information obtained from discovery responses, based on an unpublished opinion of this Court, *Bingham v. HCA Inc.*, 783 F. App'x 868 (11th Cir. 2019), which the District Court treated as precedential.

2. Whether the District Court erred in striking from an amended complaint information obtained after commencement of discovery but not through the formal discovery process, based on an unpublished opinion of this Court, *Bingham v. HCA Inc.*, 783 F. App'x 868 (11th Cir. 2019), which the District Court treated as precedential.

## STATEMENT OF THE CASE

### I.    Statutory Background

Under the False Claims Act ("FCA"), damages and penalties are imposed on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government, or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" to the United States. 31 U.S.C. § 3729(a)(1)(A) & (a)(1)(B). "Knowingly" is defined as "actual knowledge," "reckless disregard," or "deliberate ignorance" of the truth or falsity of the information, and the Act expressly requires "no proof of specific intent to defraud." *Id.* § 3729(b)(1).

1

"The False Claims Act is the primary law on which the federal government relies to recover losses caused by fraud." *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). Enacted in 1863, the FCA "was originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 181 (2016) (citation and internal quotations omitted). In 1986, Congress amended the FCA, to make it "the Government's primary litigative tool for combating fraud." S. Rep. No. 99-345, *reprinted in* 1986 U.S.C.C.A.N. 5266. The FCA's *qui tam* provision authorizes private persons to "stand in the shoes of the government" and enforce the statute's proscriptions. 31 U.S.C. § 3730(b). This provision "is a powerful tool that augments the government's limited enforcement resources by creating a strong financial incentive for private citizens to guard against efforts to defraud the public fisc." *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 546 (D.C. Cir. 2002).

## II.   Factual Background

### A.   The Federal Centralized Household Goods Traffic Management Program and the "America-First" Policy

The United States Department of State ("DOS") has 307 U.S. embassies, consulates, and diplomatic missions around the world that require a shipping service for relocation of civilian executive branch employees' Household Goods. Doc. 222 [Relator's Corrected Second Amended Complaint] ¶ 32. The DOS, among other

2

federal civilian offices, pays for and assists its employees and their families in relocating and moving their belongings through a General Services Administration ("GSA") program known as the Centralized Household Goods Traffic Management Program ("CHAMP"). *Id.* ¶ 2. DOS uses this program thousands of times per year to relocate DOS employees both domestically and internationally. *Id.* ¶ 4. Private shipping companies, or TSPs (Transportation Shipping Providers), participate in the CHAMP program and compete for shipping contract awards. *Id.*

One of the key requirements TSPs must follow is the "America-First" policy, which has been in place for decades and is laid out in multiple federal statutes, regulations, and guidelines. *Id.* ¶ 3. This policy requires use of "U.S. flag vessels" (American shipping carriers) except in unique circumstances where a waiver is obtained for use of "foreign flag vessels," which are much cheaper than American carriers and do not follow U.S. laws and customs. *Id.* Pursuant to statute and regulations, including the Household Goods Tender of Service ("HTOS"), GSA oversees and sets forth the governing guidelines and regulations for CHAMP participants. *Id.* ¶ 45. All participants in the program agree to be bound by the HTOS terms and conditions. *See id.* ¶ 46; HTOS (Aug. 2010 Ed.).

The HTOS provides, "[t]he TSP shall use vessels of United States registry for the ocean portion of overseas shipments . . . ." Doc. 222 ¶ 46; HTOS (Aug. 2010 Ed.). "[W]hen it is determined that the use of a vessel of United States registry will

3

not provide the required service, the TSP shall request permission to use a Foreign Flag vessel prior to start of shipment" and must "certif[y] in writing that US flag shipping is not available or the use of foreign flag shipping is necessary to meet delivery requirements." Doc. 222 ¶ 46; HTOS (Aug. 2010 Ed.); *see also* 14 Foreign Affairs Manual ("FAM") 616.1(a)(1) (2018) ("When both U.S.- and foreign-flag vessels operate directly between a port serving the place where the transportation of effects originates and a port serving the actual destination, shipment of effects must be made on a U.S.-flag vessel."). The HTOS and the State Department Foreign Affairs Manual reflect a three-tier "priority" system to effectuate the laws favoring the use of U.S. flag vessels. Doc. 222 ¶¶ 49–55.[2]

Each participating TSP must submit an application worksheet form to GSA. *Id.* ¶ 35. Included in this form is the HTOS Questionnaire, which emphasizes the importance of the U.S. flag requirements. *Id.* ¶¶ 35, 48.

/ / /

/ / /

---

[2] Priority 1 ("P1") service describes transportation routes that use exclusively U.S. flag vessels for the ocean portion of overseas shipments. Priority 2 ("P2") service describes transportation routes that use a combination of U.S. flag and foreign flag vessels for the ocean portion of overseas shipments. Priority 3 ("P3") service describes transportation routes that use exclusively foreign flag vessels for the ocean portion of overseas shipments. HTOS § 5.3.1; 14 FAM 616.2-2. TSPs may only use P3 service when both P1 and P2 service are unavailable, and must obtain a foreign flag waiver in order to use P3 service. Doc. 222 ¶ 53.

### B.     The Defendants' Scheme

#### 1.     Part One: Submission of Low-Ball Bids

Every year, GSA issues a Request for Offers to all TSPs approved to participate in CHAMP. *Id.* ¶ 36. The Request for Offers solicits rate proposals from TSPs for international shipping lanes. *Id.* Once the applicable bidding period closes, GSA evaluates the various rate offers, or bids, for each shipping lane and awards contracts to TSPs with the most competitive offers. *Id.* ¶ 39. One or more TSPs are awarded each lane. *Id.* ¶ 60.

The process is highly competitive and companies such as Defendants[3] submit low-ball bids to capture the lane awards. *Id.* ¶ 61. In fact, the rates submitted by Defendants are so low they could only be cost-effective if they intend to unlawfully use cheaper foreign flag cargo vessels. *Id.*

#### 2.     Part Two: Submission of Fraudulent Flag Waivers

As explained above, if a U.S. flag vessel is not available to provide the required service, TSPs can request permission to use foreign flag vessels prior to shipment. *Id.* ¶ 46. To request permission, a TSP must submit to DOS a "Request for Approval of Use of a Foreign Flag Vessel," and certify in writing that U.S. flag

---

[3] For purposes of this Brief, defendants Able Moving & Storage, Inc. ("Able"); Arpin International Group, Inc.; Cartwright International Van Lines, Inc. ("Cartwright"); DeWitt Companies Limited, LLC; Hilldrup Companies, Inc.; J.K. Moving & Storage, Inc. ("J.K."); New World International, Ltd.; Paramount Transportation Systems; Paxton Van Lines, Inc.; and Western Express Forwarding, LLC will be referred to collectively as "Defendants."

shipping is not available or that the use of the foreign flag shipping is necessary to meet delivery requirements. *Id.* In order to increase their profits (especially given their low-ball bids), Defendants routinely falsely certified the need to use foreign carriers, which are much cheaper, by submitting the required waiver form to DOS before submitting an invoice to the government for the shipment. *Id.* ¶ 7. Pursuant to the laws cited above, and the GSA contract, each TSP certifies that the waiver request is accurate and truthful as submitted. *Id.* ¶ 80.

Defendants knowingly submitted thousands of fraudulent waivers claiming U.S. flag vessels were not available, when in fact they were. *See id.* ¶¶ 84–196, Exhibits 2–12. Defendants were aware of various options to access information about the availability of U.S. flag vessels. For example, Defendants easily could have obtained knowledge of available U.S. flag vessels to transport shipments by contacting Maersk Line Limited, the largest provider of U.S. flag vessels, via email or phone or consulting the company's published route list, or by seeking information from Hapag-Lloyd AG and APL, two other major providers of U.S. flag vessels. *Id.* ¶ 83.

Relator alleges violations of 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B) of the FCA for presenting false claims to the government, and making or using false statements material to payment or approval of claims for payment. *Id.* ¶¶ 214–224.

## III.    Procedural Background

On August 4, 2020, Relator filed this *qui tam* action for civil damages and penalties under the FCA (Doc. 1), and on August 20, 2021 Relator filed a First Amended Complaint ("FAC") solely to correct the names of certain defendants and add one defendant. Doc. 149.

### A.    Discovery and Relator's Informal Investigation

On August 24, 2021, Defendants filed a Joint Motion to Stay Discovery and Stay Initial Disclosures, requesting that the District Court exercise its discretion to stay discovery pending the resolution of Defendants' motions to dismiss. Doc. 156. Defendants argued, *inter alia*, that proceeding to discovery would "impose tremendous financial and reputational costs on Defendants," and "sanction the exact type of fishing expedition Rule 9(b) is designed to prevent." *Id.* at 3. On October 12, 2021, the District Court denied Defendants' Motion to Stay Discovery, finding that Defendants had not shown they would suffer prejudice, or otherwise be burdened by engaging in discovery. Doc. 204 at 4–7. The District Court rejected Defendants' arguments based on Rule 9(b),[4] and found that "a preliminary peek" at Relator's FAC revealed sufficient detail to warrant proceeding to discovery. *Id.* at 6.

/ / /

---

[4] Unless otherwise noted, all references to rules to are to the Federal Rules of Civil Procedure.

On October 12, 2021, Relator served requests for production of documents to defendants Able, Cartwright, and J.K., including all "Request for Approval of Use of a Foreign Flag Vessel" forms that each of them submitted from 2010 to present. *See* Doc. 226-1 at 4. Able, Cartwright, and J.K. thereafter produced certain foreign flag waivers requests they had submitted to DOS. *Id.*; *see also* Docs. 226-5, 226-3, 226-4. Also on October 12, 2021, Relator served a subpoena to non-party Maersk Line, Limited ("Maersk") requesting documents related to "any analysis or audit that [Maersk] conducted related to the use of foreign flag carriers and/or the availability of U.S. flag carriers in connection with international shipments of household goods" for DOS. Doc. 226-6. Maersk did not provide documents in response to the subpoena. However, subsequently, independently from the subpoena, Maersk voluntarily provided documents to Relator summarizing the availability of U.S. flag carriers for routes for which Defendants submitted foreign flag waivers. *See* Doc. 255 at 5–6 (citing Doc. 238 at 6, Doc. 252 at 38–42).

**B.    Defendants' Motions to Dismiss and Dispositions Below**

**1.    Order on Defendants' Motion to Dismiss Relator's First Amended Complaint**

On August 24, 2021, Defendants filed motions to dismiss the FAC. Docs. 150, 153, 162. On December 16, 2021, Magistrate Judge Otazo-Reyes issued a Report & Recommendation recommending the FAC be dismissed without prejudice (the "First R&R"). Doc. 207. Thereafter, Defendants filed an objection in which they argued

8

that Relator should not be permitted to use materials obtained in discovery in an amended complaint, citing this Court's unpublished opinion in *Bingham v. HCA Inc.*, 783 F. App'x 868 (11th Cir. 2019) ("*Bingham*"). Doc. 211.

On January 20, 2022, the Court issued an order Adopting Magistrate Judge's Report and Recommendation and dismissing the FAC without prejudice. Doc. 218. Citing the absence of specific examples of foreign flag waivers, the order concluded that Relator's FAC was "an impermissible shotgun pleading" and did not adequately allege falsity and scienter. *Id.* at 11–13. The order indicated that Relator could "sufficient[ly]" allege its claims by making allegations that each Defendant submitted false foreign flag waivers and knew the foreign flag waivers were false when they submitted them for approval. Doc. 218 at 14 n.4. The order also stated that Relator could "adequately allege the falsity of foreign flag waivers" by "alleg[ing] that there were no U.S. flag vessels at the time the foreign flag waivers were submitted." *Id.* at 14 n.5. The order further found that the issue of whether Relator could use discovery materials in an amended complaint was not ripe for review, but stated:

> To the extent that Relator argues that the Court should not follow Eleventh Circuit ***precedent*** set forth in *Bingham* and ***instead rely on non-binding cases*** that contravene the Eleventh Circuit's holding on *Bingham*, *see* ECF No. [215] at 2, n.2, the Court is not persuaded. The Court will address the issue if it becomes ripe and ***appropriately follow applicable Eleventh Circuit precedent***.

*Id.* at 19 n.9 (emphases added).

9

### 2. Order on Defendants' Motion to Dismiss Relator's Second Amended Complaint and Motion for Leave to File a Third Amended Complaint

On February 9, 2022, Relator filed a Second Amended Complaint ("SAC") addressing the District Court's comments in its prior order by including dozens of examples of Defendants' foreign flag waiver requests in the body of the complaint, and hundreds more in attached exhibits. *See* Doc. 222 at ¶¶ 86–196, Exs. 1–12. These specific examples reflect information obtained from defendants Able, Cartwright, and J.K. in response to Relator's requests for production, as well as information obtained from Maersk outside the formal discovery process.

The SAC alleges that Defendants regularly falsely "certifie[d] in writing that US flag shipping is not available or the use of foreign flag shipping is necessary to meet delivery requirements." HTOS § 5.3.1; *see also* 14 FAM 616.1(a), 616.2-2; Doc. 222 at ¶¶ 86–196, Exs. 1–12. This enabled Defendants' widespread violations of the fundamental rules regarding the preference for the use of U.S. flag vessels. *See* 46 U.S.C. §§ 1241(b), 55302(b), 55305; 46 C.F.R. Part 381; *see also* Doc. 222 ¶¶ 28–31.

In all of the examples of foreign flag waivers in the SAC, Defendants fraudulently certified that no U.S. flag service was available (*i.e.*, that it was

10

necessary to use P3 service), when in fact P1 and/or P2 service was available.[5] Doc. 222 ¶¶ 84–85. In many examples, Defendants submitted waivers when a U.S. flag vessel provided service directly from the departure port to the arrival port. *See, e.g.*, *id.* ¶¶ 93, 146, 187; Exs. 2, 7, 8, 9, 12. Furthermore, the applicable DOS guidance mandates the use of a U.S. flag vessel at a "port *serving* the place where the transportation of effects originates and a port *serving* the actual destination." FAM 616.1(a)(1) (2018) (emphasis added). The SAC shows Defendants repeatedly violated this provision. In many waivers, Defendants certified that no U.S. flag vessel was available at a particular port when one was available at a different port a short distance away, oftentimes mere miles. *See, e.g.*, *id.* ¶ 86, Exs. 2, 3, 4, 6, 7, 9, 10, 11.[6]

On March 7, 2022, Defendants moved to dismiss the SAC, and moved under Rule 12(f) to strike certain material therein. Doc. 226. On July 7, 2022, Magistrate Judge Otazo-Reyes issued a second report and recommendation (the "Second R&R") recommending that Defendants' motion to strike be granted and Defendants'

---

[5] As explained above, P1 service involves exclusively U.S. flag vessels for the ocean portion of overseas shipments; P2 service involves a combination of U.S. flag and foreign flag vessels for the ocean portion of overseas shipments; and P3 service involves exclusively foreign flag vessels for the ocean portion of overseas shipments.

[6] For example, both the Port of Baltimore and Port of Norfolk serve the greater Washington D.C. area. One of Defendants' own foreign flag waivers shows that such ports were viewed interchangeably. *See* SAC, Exhibit 7, DC19141205 ("Currently no US flag vessels available from *Norfolk or Baltimore*" (emphasis added)).

motion to dismiss be granted with prejudice, subject to the government's prior written consent. Doc. 251. With respect to the motion to strike, the Second R&R rejected Relator's argument that *Bingham* was not binding and inapposite, citing the District Court's prior statement that it would "appropriately following applicable Eleventh Circuit precedent [*Bingham*]." Doc. 251 at 9 (citing Doc. 218 at 19 n.9). The Second R&R did not analyze the propriety of applying *Bingham*, but rather recommended simply that the District Court "strik[e] the Waiver Requests obtained by Relator in discovery, in accordance with the Eleventh Circuit's holding in *Bingham*, compel[ling] dismissal of the SAC." *Id.* at 10.[7]

On July 21, 2022, Relator filed an objection to the Second R&R. Doc. 255. On August 12, 2022, Relator filed a Motion for Leave to File Third Amended Complaint including additional detail to address perceived deficiencies with Relator's SAC identified by the Second R&R that were not raised in the briefing or order on Defendants' motions to dismiss the FAC. Doc. 259.

---

[7] The Second R&R also concluded that the FCA's public disclosure bar was not applicable in light of the new allegations in the SAC (*id.* at 10–12); that Relator "failed to submit any actual claims for payment by Defendants or to allege any details regarding such claims that would disclose their purported falsity" (*id.* at 12); and that Relator's allegations of Defendants' failure to inquire of the potential availability of U.S.-flag vessels "did not satisfy the FCA's rigorous scienter requirement." *Id.* at 15. None of these issues were squarely presented in connection with the motions to dismiss the FAC or the Order thereon. Further, the District Court did not address these issues in its Order dismissing the action. Doc. 265.

On September 9, 2022, the District Court issued an Omnibus Order Adopting Magistrate Judge's Report and Recommendations and Denying Motion for Leave to File Third Amended Complaint (the "Order"). Doc. 265. The Order first noted the R&R's conclusions that *Bingham* "***establishes*** that materials obtained by relators in discovery may not be used to satisfy Rule 9(b) requirements in an amended complaint," and that "*Bingham* ***compels*** the striking of the Waiver Request Allegations and the dismissal of the SAC." *Id.* at 9–10 (emphases added). The District Court adopted the R&R's findings and struck materials Relator obtained (both formally through discovery and informally) following the commencement of discovery because, *inter alia*, *Bingham* "***plainly instructs district courts*** to strike allegations to promote compliance with Rule 9(b)." *Id.* at 12 (emphasis added). The District Court did not attribute any significance to the fact that Relator did not obtain information from Maersk through discovery, finding that "*Bingham*'s holding applies to documents obtained through discovery whether they were in response to a subpoena or otherwise." *Id.* at 14. The District Court further stated, without questioning the applicability of *Bingham*'s holding to this set of facts, that "*Bingham* makes no distinction between the manner in which the information was obtained during discovery." *Id.* "With the backdrop of *Bingham* in place," the District Court struck the evidence that Defendants had submitted false flag waivers to DOS. *Id.*

The District Court then found that Relator's SAC should be dismissed, its analysis consisting of the following:

> Without the Waiver Request Allegations, Relator fails to sufficiently state a claim for the presentment claim or the make-or-use claim, and dismissal of the SAC is warranted. Given the Court's determination the Court need not address Relator's remaining arguments with regard to the present claims or the make-or-use claim.

*Id.*

The District Court's Order also denied Relator's motion for leave to file a third amended complaint. *Id.* at 16. The District Court found that the proposed amendments "would be futile given that Relator has not and cannot allege the necessary predicate regarding Waiver Requests without relying on information it obtained through discovery." *Id.*

## IV.    Standard of Review

A district court's ruling on a motion to dismiss is reviewed *de novo*. *Paez v. Mulvey*, 915 F.3d 1276, 1292 (11th Cir. 2019). The Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (citations omitted). A motion to dismiss should be denied if, taking the allegations in the plaintiff's complaint as true, the plaintiff makes out a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A district court's grant of a motion to strike alleged facts under Federal Rule of Civil Procedure 12(f) is reviewed for an abuse of discretion. *See Branch Banking & Tr. Co. v. Lichty Bros. Constr., Inc.*, 488 F. App'x 430, 434 (11th Cir. 2012).

A district court's denial of leave to amend on the ground of futility is reviewed *de novo. Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENT

The District Court's decision to strike facts learned after the start of discovery and dismiss Relator's Second Amended Complaint was predicated on treating *Bingham*, an unpublished decision of this Court, as precedential. This constituted error and warrants reversal on its own.

The District Court separately committed error in a number of other ways, including by failing to recognize the absence of authority for striking information learned through discovery or informal investigation. The District Court's general references Rule 9(b) do not support striking allegations, particularly where, as here, a motion to stay discovery was denied. In addition, the District Court improperly disregarded without comment contrary authority from both within and outside the Eleventh Circuit.

Further, while purporting to apply *Bingham*'s holding by striking material Relator obtained from non-party Maersk (Doc. 265 at 14), the District Court in fact

15

significantly extended *Bingham* to prohibit the use of information obtained through informal investigation. Without further analysis, the District Court simply concluded that "*Bingham* makes no distinction between the manner in which the information was obtained during discovery." *Id.* at 14.

The District Court's decision is also against public policy and runs contrary to the letter and purpose of the FCA. For example, striking materials obtained after the start of discovery would broaden an existing safe harbor under the FCA to grant absolute immunity to any defendant that produces evidence of its violations in discovery, as long as the complaint has not yet passed Rule 9(b) challenges. It also fundamentally threatens a relator's ability to investigate fraud against American taxpayers, frustrating the purpose of the FCA.

## ARGUMENT

### I.    The District Court Erred in Relying on the Non-Precedential *Bingham* to Strike Materials Obtained After the Commencement of Discovery

#### A.    The District Court Erred in Treating *Bingham* as Binding Authority

The District Court relied on *Bingham* as a precedential basis for dismissing Relator's SAC. In doing so, the District Court ignored the "elemental point" that while this Court's "unpublished opinions may be cited as persuasive authority, they are not considered binding precedent." *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022) (citing 11th Cir. R. 36-2); *see also Ray v.*

*McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016) ("In this Court, unpublished decisions . . . are not precedential and they bind no one."); *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) ("Unpublished opinions are not binding precedent.").

As discussed above, in ruling on Defendants' objection to the Magistrate Judge's First R&R, the District Court stated that it would "appropriately follow ***applicable Eleventh Circuit precedent*** [*Bingham*]" with respect to use of the use of materials obtained in discovery, if the issue became ripe. *See* Doc. 218 at 19 n.9 (emphasis added). Taking this cue from the District Court, in the Second R&R Magistrate Judge Otazo-Reyes recommended striking all materials perceived to be obtained in discovery, expressly basing this recommendation on the non-precedential *Bingham*. Doc. 251 at 9–10. After concluding that certain materials cited in the SAC were obtained in discovery, the Second R&R simply determined: "striking the Waiver Requests obtained by Relator in discovery, in accordance with the Eleventh Circuit's holding in *Bingham*, compels dismissal of the SAC." *Id.* at 10.

The District Court's order adopting the Second R&R again treated the non-precedential *Bingham* as binding. The District Court began by reciting the Second R&R's faulty premise "that [*Bingham*] ***establishes*** that materials obtained by relators in discovery may not be used to satisfy Rule 9(b) requirements in an

amended complaint." Doc. 265 at 9 (emphasis added). The District Court went on to note Relator's argument that "*Bingham* is an unpublished outlier case," but nonetheless summarily rejected Relator's authority from a variety of jurisdictions, including within the Eleventh Circuit, running contrary to *Bingham*. *Id.* at 12–13; *see also infra*, Section I.C. Without even acknowledging the holdings or rationales of Relator's cases, the District Court dismissed them all out-of-hand because Relator did not "cite[] any legal authority from the Eleventh Circuit that contravenes the Eleventh Circuit's holding in *Bingham*." *Id.* at 12; *see also id.* ("Relator merely relies on non-Eleventh Circuit cases.").[8] But there is no binding authority in the Eleventh Circuit regarding reliance on discovery materials, and the District Court erred by treating *Bingham* as precedential while summarily disregarding other persuasive authority without comment. *See Bullock v. United States*, 655 F. App'x 739, 742 (11th Cir. 2016) (vacating and remanding district court's dismissal of plaintiff's motion as untimely where, *inter alia*, "the district court relied almost exclusively on [an] unpublished decision" of the Eleventh Circuit); *cf. Sifonte v. Fonseca*, No. 1:21-CV-20543, 2021 WL 8972153, at *3 (S.D. Fla. Sept. 29, 2021) (considering the

---

[8] As discussed further below, Relator did in fact cite authority from within the Eleventh Circuit allowing the use of discovery materials in an amended complaint in a FCA action. *See* Doc. 265 (citing *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD, 2013 WL2303768, at *4 n.9 (N.D. Ga. May 17, 2013).

"persuasive authority of other jurisdictions" in the absence of Eleventh Circuit precedent).

The District Court's improper reliance on *Bingham* infected all aspects of its analysis. For example, the District Court acknowledged Relator's argument that *Bingham* "does not categorically require the striking of [information obtained in discovery] in an amended complaint." Doc. 265 at 10. But rather than addressing the merits of this argument, the District Court simply concluded that, under *Bingham*, "[t]he Eleventh Circuit plainly instructs district courts to strike allegations to promote compliance with Rule 9(b) . . . ." *Id.*; *see also id.* at 14 ("The import of *Bingham* is to prevent the filing of frivolous complaints . . . ."); *id.* ("*Bingham*'s holding applies to documents obtained through discovery whether they were in response to a subpoena or otherwise."). Although these conclusions lack merit for independent reasons, as discussed in more detail below, the District Court committed procedural error by blindly relying on the non-precedential *Bingham*.

Other circuits have discussed the dangers attendant to treating an unpublished appellate decisions as precedent, as the District Court did here. *See, e.g.*, *Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) (reversing summary judgment where district court improperly relied on a non-precedential memorandum disposition "as the pivotal basis for a legal ruling"). In *Grimm*, the Ninth Circuit explained that its unpublished decisions were "of little to no use to district courts" in predicting how

it would "view any novel legal issues in the case on appeal." *Id.* at 1067. This is because

> [u]npublished dispositions provide shorthand explanations meant to apprise the parties of the basis for a decision. . . . And the reasoning in the dispositions is rarely developed enough to acknowledge and account for competing considerations, reconcile precedents that could be seen as in tension with each other, or describe limitations to the legal holdings—because, in theory, there are no new legal holdings, just applications of established law to facts.

*Id.* (citing Ninth Circuit General Order 4.3(a); 9th Cir. R. 36-2(a)). These principles and the underlying rationale apply with equal force in the Eleventh Circuit. *See McNamara*, 30 F.4th at 1060–61; 11th Cir. R. 36-2.

Here, the District Court "simply cite[d] to one of [this Court's] unpublished opinions as the basis for its decision without separately determining that it is persuasive." *McNamara*, 30 F.4th at 1060–61. In doing so, the District Court committed error. As explained below, *Bingham* reached the incorrect outcome and is inapplicable under the circumstances of this case.

**B.     *Bingham* Was Wrongly Decided**

**1.  *Bingham* Did Not Set Forth Authority for Striking Discovery Materials**

The unpublished *Bingham* is an outlier insofar as information obtained through discovery was stricken from an amended complaint after it was filed. Its unique status is attributable to the fact that neither the Eleventh Circuit, nor the

district court whose decision it affirmed, provided sufficient authority for striking the allegations at issue.

In *Bingham*, a relator brought a *qui tam* action under the FCA alleging that a healthcare services provider, HCA, submitted Medicare claims for services rendered in violation of the Anti-Kickback Statute and Stark Statute. *Bingham*, 783 F. App'x at 870–72. HCA moved to dismiss the relator's complaint, and the district court granted HCA's motion but allowed the relator to amend his complaint. *Id.* at 875. The relator filed an amended complaint that included additional information obtained through discovery. *Id.* HCA filed a second motion to dismiss and a motion to strike certain allegations on the basis that the relator's amended complaint relied on information learned through discovery. *Id.* The district court granted both motions, stating generally that the relator's "reliance on information learned through discovery to satisfy Rule 9(b) [was] misplaced," but failing to cite any authority to support that striking was a proper remedy. *See United States State of Fla. ex rel. Bingham v. HCA, Inc.*, No. 13-23671-CIV, 2016 WL 6027115, at *5 (S.D. Fla. Oct. 14, 2016).

The Eleventh Circuit affirmed, but similarly neglected to cite authority to support striking the allegations based on discovery. *Bingham*, 783 F. App'x at 876. The panel simply concluded that "the goals of applying Rule 9(b) to False Claims Act cases are advanced by striking information in Relator's SAC that was learned

through discovery." *Id.* In this regard, the panel noted the district court's finding that "it is important to discourage plaintiffs from being able to learn the complaint's bare essentials through discovery." *Id.* (citation and internal quotations omitted). The panel further stated that "prohibiting a relator to use discovery [*sic*] to meet the requirements of Rule 9(b) reflects, in part, a concern that a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs." *Id.* (citation and internal quotations omitted).

*Bingham* summarily cited *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783 (11th Cir. 2014), for the proposition that amendments including material obtained during discovery may not be appropriate in cases where Rule 9(b) applies. *Bingham*, 783 F. App'x at 876. But the panel's reliance on *Keeler* was inapt as *Keeler* likewise provides no authority for striking materials obtained through discovery. In *Keeler*, the relator moved for leave to file an amended complaint after his complaint was dismissed with prejudice. *Keeler*, 568 F. App'x at 804. The district court denied the motion, citing, *inter alia*, the fact that Relator had failed to attach a proposed complaint to his motion as required by the local rules. *Id.* The Eleventh Circuit affirmed the district court's order without any comment on the propriety of using discovery materials in an amended complaint.[9]

---

[9] The Eleventh Circuit's decision stated in its entirety: "We affirm the dismissal of this case for the reasons set forth in the district court's scholarly and thorough January 31, 2013, Order and its April 1, 2013, clarification Order." *Id.*

In short, *Bingham* offered an insufficient legal basis to strike the material used in the amended complaint. While some courts decline to relax Rule 9(b) *to allow* discovery on a deficient complaint in the context of a pre-discovery dismissal, *Bingham* appears to stand alone in refusing to consider well-pleaded allegations of fraud because they were purportedly obtained in discovery. As explained below, in accordance with the plain text of Rule 12(f), the purposes of Rule 9(b), and case law addressing the use of discovery materials in amending a complaint, the panel in *Bingham* should have denied the request to strike allegations supported by information learned in discovery, let alone through informal investigation. The District Court erred in failing to recognize the infirmities underlying *Bingham* and blindly following it as "precedent."

### 2.    There Is No Basis Under Rule 12(f) to Strike Information Obtained After the Commencement of Discovery

Rule 12(f) and the case law applying it are clear that striking materials gathered after the commencement of discovery from an amended complaint is wholly inappropriate. The district court in *Bingham* struck discovery material under Rule 12(f) without analysis, and the Eleventh Circuit affirmed without comment on the applicability of Rule 12(f). Here Defendants likewise moved under Federal Rule of Civil Procedure 12(f) to strike the allegations in Paragraphs 84–196 of the SAC and all exhibits attached to the SAC, claiming that the details of their false foreign flag waivers are "impermissible." Docs. 226, 226-1. As explained below, there is no

basis under Rule 12(f), or otherwise, to strike the materials used in Relator's SAC, and the District Court erred by failing to determine whether there was any foundation in the law (setting aside the non-precedential and wrongly decided *Bingham* case) to strike those materials.

"[A] motion to strike a pleading is a drastic remedy to be resorted to only when required for the purposes of justice." *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1361 (S.D. Fla. 2009) (cleaned up). "Under Rule 12(f), a motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Hall v. Carnival Corp.*, 536 F. Supp. 3d 1306, 1310 (S.D. Fla. 2021) (cleaned up); *see also Fabing v. Lakeland Regional Medical Center, Inc.*, No. 8:12-cv-2624-T-33MAP, 2013 WL 593842, *2 n.2 (M.D. Fla. 2013) (describing Rule 12(f) as a "draconian sanction").

Material may only be stricken under Rule 12(f) if it falls within one of its enumerated categories. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any *redundant*, *immaterial*, *impertinent*, or *scandalous* matter.") (emphasis added). "Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.); *see also United States ex rel. Dildine v. Pandya*, 389 F. Supp. 3d 1214, 1223 (N.D. Ga. 2019)

(articulating that the moving party bears the burden of providing the court with reasons that the challenged language violates Rule 12(f)); *cf. Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (denying motion to strike where defendants sought "to use Rule 12(f) as a substitute for Rule 12(b)(6)," and observing that "[a]n impermissible use of a Rule 12(f) motion alone would be reason to deny Defendants' motion to strike").

Relator's allegations in paragraphs 84–196 are not "redundant, immaterial, impertinent, or scandalous," and the District Court did not even consider whether they were. Rather than engaging in any analysis of Rule 12(f), the District Court simply cited *Bingham* for the proposition that discovery materials are properly stricken even when they plainly do not fall within the scope of Rule 12(f). *See* Doc. 265 at 12.[10]

That Defendants suffer no prejudice from the allegations in Paragraphs 84– 196 provided an alternative basis not to strike any material from the SAC, an argument that the District Court similarly ignored. Even if material "literally is within one or more of the categories set forth in Rule 12(f)," a motion to strike should

---

[10] As noted above, Defendants asserted in their motion to dismiss the SAC that the SAC's evidence of foreign flag waivers is "impermissible." Doc. 226-1 at 6. But there is no such basis under Rule 12(f). *United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 571 (M.D. Tenn. 2021) ("Defendants' motion is titled 'Motion to Strike Impermissible Material in Relators' First Amended Complaint.' [] Rule 12(f) says nothing about striking 'impermissible' material and, for this reason alone, the Motion could be denied.").

be denied "when the court believes that no prejudice could result from the challenged allegations." *Select Auto. Mgmt., LLC v. Fid. Three, Inc.*, No. 8:07-CV-519-T-24 EAJ, 2007 WL 9723895, at \*1 (M.D. Fla. June 1, 2007) (citation omitted). Defendants cannot be said to suffer prejudice based on evidence of their false foreign flag waivers, which the District Court stated is central to their scheme. *See* Doc. 218 [Order Adopting First R&R] at 14 n.4, n.5 (suggesting that that if Relator were to "allege that there were no U.S flag vessels at the time the foreign flag waivers were submitted" such allegations would "adequately allege the falsity of the foreign flag waivers"); *cf. California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (possibility that issues will be *unnecessarily complicated* or that superfluous pleadings may cause trier of fact to draw *unwarranted inferences* constitutes prejudice sufficient to support granting motion to strike) (emphasis added). The District Court neglected to address the fact that, far from prejudicing the Defendants, the stricken materials provided detailed corroboration for Relator's allegations.

Simply put, there was no basis for the District Court to impose Rule 12(f)'s "draconian sanction" by striking the SAC's new allegations detailing Defendants' fraud.

/ / /

/ / /

26

### 3.    Rule 9(b) Does Not Warrant Striking Information Obtained After the Commencement of Discovery

*Bingham*'s reliance on Rule 9(b) as the basis for the decision to strike discovery materials was misplaced, and the District Court erred in following *Bingham*'s flawed rationale. *Bingham* found "amendments that include material obtained during discovery, prior to a final decision on the motion to dismiss, may not be appropriate in cases to which the heightened pleading standard of Rule 9(b) applies if the amendment would allow the plaintiff to circumvent the purpose of Rule 9(b)." *Bingham*, 783 F. App'x at 876; *see also* Doc. 265 at 12 (similar). In this regard, *Bingham* stated that "[t]he particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *Id.* (citation and internal quotations omitted). However, *Bingham*, and in turn the District Court here, failed to recognize that Rule 9(b) considerations are absent where discovery has already commenced.

The court in *Bingham*, followed by the District Court here, struck allegations based on purported concerns about "fishing expeditions" (albeit without using that phrase). *See id* at 876; Doc. 265 at 12–13. As courts have recognized, "[b]y eliminating insufficient pleadings at the initial stage of litigation, Rule 9(b) prevents relators using discovery as a fishing expedition." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1310 (Fed. Cir. 2011) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)). Thus, Rule 9(b) is designed to perform a gatekeeping

function and, in appropriate cases, prevent the commencement of discovery in the first instance. But purported fears about fishing expeditions make little sense where discovery and informal investigation *has already occurred* and in fact substantiate a relator's allegations. There could be no concern about a "fishing expedition" when the SAC was filed—the catch was already on the hook.

District courts have other avenues to prevent fishing expeditions, including by staying discovery where appropriate. Here, for example, the District Court denied Defendants' motion to stay discovery pending resolution of their motions to dismiss the FAC. Doc. 204. The District Court considered Defendants' argument that "[t]he particularity requirement of Rule 9 is a nullity if [Relator] gets a ticket to the discovery process without identifying a single claim." *Id.* at 6 (citations omitted). Nonetheless, the District Court determined that Relator's FAC contained sufficient detail to warrant proceeding to discovery. It belies logic that Relator—after being permitted to engage in discovery—would be prohibited from using corroborating documents obtained thereafter. Concerns over fishing expeditions should be addressed through discovery stays where appropriate, not by overlooking evidence of fraud.

Further, as noted, *Bingham* simply stated that amendments including material obtained during discovery *may* not be appropriate where Rule 9(b) applies. *Bingham*, 783 F. App'x at 876. The opinion does not say that such information is categorically

28

prohibited and must be stricken. Thus, *Bingham*, even taken at face value, did not require the District Court to strike any of the allegations in the SAC. Indeed, with respect to all of the material in Paragraphs 84–196 of the SAC and the associated exhibits, including that which Defendants contend was obtained through party discovery, other Rule 9(b) considerations mentioned in *Bingham* are absent. Relator's FAC was not "missing core underpinnings"; nor did it include "baseless allegations used to extract settlements." *See Bingham*, 783 F. App'x at 876. Here, the SAC substantiates the allegations in the FAC through considerable specific evidence of Defendants' fraudulent scheme, establishing that the FAC's allegations were not "baseless." Relator's additional allegations in the SAC do not "allow[]" it to "circumvent the purpose of Rule 9(b)." *Id.* Instead, the allegations help "reasonably notify" Defendants of their "purported role in the scheme," *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 493 (11th Cir. 2009), and "alert[] [Defendants] to the precise misconduct with which they are charged," *Haynes v. JPMorgan Chase Bank, N.A.*, 466 Fed. Appx. 763, 765 (11th Cir. 2012). In short, Relator's corroborating, detailed allegations in the SAC *promote* the purposes of Rule 9(b).

### C. The District Court Failed to Address Case Law Contrary to *Bingham*

Rather than follow the non-precedential *Bingham*, the District Court should have applied the "common and well established" principle of "[a]llowing parties to

amend based on information obtained through discovery." *Darryl Battle, et al. v. CLI Atlas Deerwood LLC, et al.*, No. EDCV202358JGBSPX, 2021 WL 3616108, at *2 (C.D. Cal. June 24, 2021). The District Court erred in summarily rejecting the "non-Eleventh Circuit" authority Relator cited in support of this proposition, claiming that such authority "contravene[d] the Eleventh Circuit's holding in *Bingham*." Doc. 265 at 12.

As an initial matter, it is not correct that the authority supporting Relator's position all comes from outside the Eleventh Circuit. The District Court cited but failed to consider *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD, 2013 WL 2303768 (N.D. Ga. May 17, 2013). There a relator alleged that two defendants violated the FCA by submitting claims for off-label atypical antipsychotic drugs that were not covered or were not reimbursable by Medicare Part D. *Id.* at *1. The relator engaged in discovery and amended its complaint several times, and the third amended complaint contained information the relator had obtained in discovery. *Id.* at *4 n.9. The defendants moved to dismiss for failure to meet the pleading requirements of Rule 9(b). *Id.* at *1. The defendants further argued that the court should "disregard" factual allegations in the third amended complaint that had been "improperly 'bolstered' . . . using information that [the relator] obtained during discovery in this matter." *Id.* at *4 n.9. The court rejected this contention, finding that Rule 9(b)'s aim of "prevent[ing] a plaintiff from filing a

fraud claim without any factual basis" was not applicable where a plaintiff already had supporting facts in its possession. *Id.* Thus, the court concluded that the relator was not "precluded [under Rule 9(b)] from pleading facts that it *already* has obtained in discovery." *Id.* (emphasis in original). The court held that "[a]ny allegations in the Third Amended Complaint based on facts learned in discovery in this case may, in this case, be considered." *Id.*

A number of other courts in various jurisdictions have reached similar conclusions as the court in *Omnicare*. For example, in *Remmes v. Int'l Flavors & Fragrances, Inc.*, a worker in popcorn manufacturing plant brought, *inter alia*, a fraudulent concealment claim alleging that he was injured through nondisclosure of deleterious effects of chemical contained in butter flavoring. 453 F. Supp. 2d 1058 (N.D. Iowa 2006). After discovery had commenced, the defendants moved to dismiss the plaintiff's second amended complaint, and asserted that information obtained through discovery could not be used by the plaintiff to amend his fraudulent concealment claim. *Id.* at 1060. The court denied the defendants' request to strike information obtained through discovery, noting that there is "no prohibition on the use of the materials unearthed during discovery [under Federal Rule of Civil Procedure 26]," and Federal Rule of Civil Procedure 15 "contains no restriction on the use of information garnered through discovery in framing an amendment." *Id.* at 1071. The court thus concluded that

31

> in the absence of any legal authority which would permit the court to selectively exclude those portions of the Second Amended Complaint which were added following discovery and then proceed to analyze the legal sufficiency of plaintiff Remmes's fraudulent concealment claim based on his pre-discovery knowledge and allegations, the court will proceed to conduct its analysis of the Second Amended Complaint without redaction.

*Id.* at 1072.

A number of other cases have held similarly. *See, e.g.*, *United States ex rel. Knapp v. Calibre Sys., Inc.*, No. 2:10-cv-4466-ODW (JCGx), 2012 WL 1577420, at *2 (C.D. Cal. May 4, 2012) (permitting relator to amend with information learned through discovery); *United States ex rel. Galmines v. Novartis Pharm. Corp.*, 88 F. Supp. 3d 447, 451 (E.D. Pa. 2015) (granting leave to amend and noting that "it would make little sense *not* to allow a relator to obtain these details [about the start and end date of a fraud] during discovery and amend her complaint accordingly") (emphasis added); *United States v. Marshall Med. Ctr.*, No. 12-CV-0098-JAM, 2015 WL 2235461, at *3 (E.D. Cal. May 12, 2015) ("If discovery reveals grounds for holding [defendant] liable in this case, [relator] may move to amend her complaint at the appropriate time.").

These cases correctly recognize the absence of legal authority to impose the drastic remedy of striking material obtained in discovery, as well as the inapplicability of Rule 9(b) concerns where a relator already has discovery materials

in their possession. The District Court should have adopted the well-reasoned approach taken by courts both within the Eleventh Circuit and elsewhere.

### D. As a Matter of Public Policy, Discovery Materials Should Not Be Stricken in False Claims Act Cases

Affirming the District Court's decision to strike the substantial, detailed allegations in Paragraphs 84–196 and accompanying exhibits, would deny justice to the American taxpayer on a procedurally improper and unjustifiable technicality. It would essentially grant immunity to Defendants for providing evidence of their fraud. Doing so would not only be against public policy, but it would also rewrite the FCA. In fact, there *is* a legislatively created safe harbor under the FCA for defendants who self-disclose their fraud to the government. Specifically, title 31 section 3729 (a)(2) of the FCA provides that if a defendant self-discloses its violations *prior* to commencement of an FCA action, then it may only be subject to double damages, rather than treble damages.

If affirmed, the District Court's decision would broaden this safe harbor to grant absolute immunity to any defendant that produces evidence of its violations in discovery, as long as the FCA complaint has not yet passed all Rule 9(b) challenges. There is no basis in the law or policy to judicially create such a safe harbor at the expense of taxpayers. Further, as discussed below, the District Court's holding extends *Bingham* to restrict the use of information obtained outside the formal discovery process. *See infra*, Section II.

33

As explained, the District Court's Order was based on the idea, enunciated in *Bingham*, that striking allegations supported by discovery materials would "ensure that a relator's strong financial incentive to bring an FCA case does not precipitate in [*sic*] the filing of frivolous lawsuits." Doc. 265 at 12. But this notion does not hold up to scrutiny. For starters, a relator cannot count on obtaining corroborating discovery considering that, as discussed above, a district court can stay discovery pending challenges based on Rule 9(b). *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1560 (11th Cir. 1985) (citation omitted) (stating that courts have "broad discretion to stay discovery pending decision on a dispositive motion"). Additionally, defendants have numerous options with respect to the filing of frivolous lawsuits, including a range of available sanctions and counterclaims, to name a few. *E.g.*, Fed. R. Civ. P. 11. Indeed, the FCA specifically mitigates concerns regarding frivolous lawsuits by authorizing the award of fees to defendants if a complaint is frivolous or brought for purposes of harassment. 31 U.S.C. § 3130(d)(4) (making fees and costs available where "the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment"). Furthermore, the Department of Justice maintains the ability to dismiss FCA cases pursued by relators, even after declining to intervene. *See Polansky v. Exec. Health Res. Inc*, 17 F.4th 376 (3d Cir. 2021), *cert. granted sub nom. United States ex rel. Polansky v. Exec. Health Res., Inc.*, 142 S. Ct. 2834

34

(2022). There are thus multiple safeguards against frivolous filings. Giving a free pass to defendants whose sweeping fraud against American taxpayers is already supported by evidence is far too high a price for what would be a nominal decrease, if any, in the incentive for relators to prosecute FCA actions.

## II.    The District Court Erred in Striking Materials Obtained from a Non-Party Outside of Discovery

Even assuming that the District Court was justified in striking materials obtained through the formal discovery process by relying solely on the non-precedential *Bingham*, the District Court's Order improperly extends *Bingham* to forbid corroborating material gathered informally by a relator. Specifically, the District Court not only struck factual details obtained through discovery responses of three Defendants, but also struck factual details voluntarily produced to Relator by a third party, Maersk Lines, Limited. The District Court incorrectly stated that "it is apparent that Relator . . . concede[d] that the Waiver Requests were from Maersk's document production" Doc. 265 at 14 (citing Doc. 252 at 45–46).[11] However, the Order found that, regardless, "*Bingham*'s holding applies to documents obtained through discovery whether they were in response to a subpoena or otherwise," and that "*Bingham* makes no distinction between the manner in which the information

---

[11] The cited portion of the hearing transcript plainly does not support the District Court's conclusion. *See* Doc. 252 at 45–46 (colloquy making no indication as to the manner in which Relator obtained materials from Maersk).

was obtained during discovery." *Id.* The District Court had no basis for extending *Bingham* in this manner and erred in doing so.

As an initial matter, the District Court erred in finding that Relator obtained documents from Maersk through formal discovery. Although Relator had issued a subpoena, Maersk did not produce documents subject to that subpoena. The Maersk Subpoena included a single request:

> All DOCUMENTS RELATED TO, referencing, or reflecting any analysis or audit that YOU conducted RELATED TO the use of foreign flag carriers and/or the availability of U.S. flag carriers in connection with international shipments of household goods for the United States Department of State, including but not limited to the work completed by Bill Sagan.

Doc. 226-6 at 13.

The District Court incorrectly concluded that Maersk produced documents pursuant to a subpoena, reasoning that it is "immaterial" that "Maersk did not expressly state that it was producing the documents pursuant to the Maersk Subpoena" because "the Maersk Subpoena was served" and Maersk "*was under compulsion* to produce the documents." Doc. 265 at 11, 14 (emphasis added). But this is not accurate, as there was no order by the District Court compelling Maersk's compliance with the subpoena.

Instead, after becoming aware of this action based on the subpoena, Maersk voluntarily provided Relator with corroborating information, as Maersk was also interested in putting a stop to the fraud at issue in this case. *See United States ex. rel.*

36

*Maersk Line, Ltd. v. Accelerated Intl. Forwarders, et al.*, Case No. 1:21-dv-23908-DPG, Doc. 1 [Complaint] (Nov. 5, 2021). Accordingly, to the extent the District Court struck materials provided by Maersk based on the notion that they were produced pursuant to a subpoena, it committed error.

Insofar as the District Court's Order holds that any material produced after the commencement of discovery is properly stricken, because "*Bingham* makes no distinction between the manner in which the information was obtained during discovery" (Doc. 265 at 14), this dramatically extends *Bingham* without any justification. As discussed herein, the outcome in *Bingham* was based on concerns that plaintiffs could get discovery from a defendant without setting forth "the complaint's bare essentials." *Bingham*, 783 F. App'x at 876. Such concerns are obviously absent with respect to a relator's informal investigation, which occurs independently from the discovery process.

Along the same lines, as courts have recognized, *Bingham* pertains specifically to *party* discovery. *See, e.g.*, *SouthEast Eye Specialists,* 2021 WL 5150687, at *6 (denying motion to strike information "Relators obtained [] from the United States as a part of the Government investigation of the matter" and distinguishing *Bingham* on the basis that the discovery there came from the defendant); *see also United States ex rel. Underwood v. Genentech, Inc.*, 720 F. Supp. 2d 671, 680 (E.D. Pa. 2010) (noting the existence of certain authority

"preclud[ing] only amendments to a *qui tam* complaint based on discovery obtained *directly* from the *qui tam* defendant") (emphasis in original). There is no similar prohibition against using information obtained from *third parties*, and it is undisputed that information underlying the allegations for all but three Defendants did not come from party discovery. Doc. 265 at 10. Thus, allegations pertaining to those seven Defendants which clearly did not produce documents in discovery[12] are not implicated by *Bingham*'s holding or analysis.

## <u>CONCLUSION</u>

For the foregoing reasons, Relator respectfully requests that the Court reverse the District Court's Order, and allow this important case to proceed.

Dated: December 29, 2022      Respectfully submitted,

                                        */s/ Justin T. Berger*
                                   COTCHETT, PITRE & McCARTHY, LLP
                                   Justin T. Berger (CA 250346)
                                   Sarvenaz J. Fahimi (CA 226148)
                                   San Francisco Airport Office Center
                                   840 Malcolm Road
                                   Burlingame, CA 94010

                                   RABIN, KAMMERER, JOHNSON
                                   Adam T. Rabin (FL 985635)
                                   Havan M. Clark (FL 1026390)
                                   1601 Forum Place, Suite 201
                                   West Palm Beach, FL 33401

                                  *Attorneys for Plaintiff/Appellant Sedona Partners LLC*

---

[12] Arpin, DeWitt, Hilldrup, New World, Paramount, Paxton, and Western Express.

**Form 6.**          **Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.          This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)
(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☒     this document contains **9,089** words, **or**

☐     this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.          This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

☒     this document has been prepared in a proportionally spaced typeface using
Microsoft Word, Version 2211 in 14pt font size, Times New Roman, **or**

☐     this document has been prepared in a monospaced typeface using [*state name and
version of word-processing program*] with [*state number of characters per inch and
name of type style*].

(s) _/s/ Justin T. Berger_

Attorney for  Appellant Sedona Partners, LLC

Dated:  12/29/22

(As added Apr. 29, 2002, eff. Dec. 1, 2002; amended Apr. 28, 2016, eff. Dec. 1, 2016.)