IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA Case No. 22-13340-D
United States District Court, Southern District of Florida
Case No.:  1:20-cv-23242-BB

SEDONA PARTNERS, LLC

Plaintiffs/Appellants

v.

ABLE MOVING & STORAGE, INC., et al.

Defendants/Appellees.

**JOINT ANSWER BRIEF OF APPELLEES[1]**

KRISTEN M. FIORE, BCS (FL 25766)    NOAM FISCHMAN (DC 97580)
**AKERMAN LLP**                      **AKERMAN LLP**
201 E. Park Avenue, Suite 300        750 Ninth Street, N.W., Suite 750
Tallahassee, FL 32301                Washington, D.C. 20001
Telephone:  (850) 224-9634           Telephone:  (202) 393-6222
Facsimile:  (850) 222-0103           Facsimile:  (202) 393-5959
kristen.fiore@akerman.com            noam.fischman@akerman.com

**ATTORNEYS FOR APPELLEE CARTWRIGHT
INTERNATIONAL VAN LINES, INC.**

---

[1] The term "Appellees," as used herein, refers to all Appellees in the above-captioned proceeding except Paramount Transportation Systems, which did not join in the preparation of this brief.

JAMES H. WYMAN (FL 117692)
**HINSHAW & CULBERTSON LLP**
2525 Ponce de Leon Blvd., Suite 400
Coral Gables, FL 33134
Telephone:  (305) 358-7747
Facsimile:  (305) 577-1063
jwyman@hinshawlaw.com

**ATTORNEYS FOR APPELLEE NEW WORLD INTERNATIONAL, LTD.**

NICHOLAS E. PANTELOPOULOS
(FL 103751)
**KMA ZUCKERT LLC**
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134
Telephone:  (305) 506-2052
Facsimile:  (305) 675-7606
nep@kmazuckert.com

JOLYON ANDREW SILVERSMITH
(DC 463897)
**KMA ZUCKERT LLC**
888 17th Street, N.W., Suite 700
Washington, DC 20006
Telephone:  (202) 973-7918
Facsimile:  (202) 342-0683
jsilversmith@kmazuckert.com

**ATTORNEYS FOR APPELLEE ARPIN INTERNATIONAL GROUP, INC.**

STUART A. BERMAN (MD 9201020005)
**LERCH, EARLY & BREWER, Chtd.**
7600 Wisconsin Avenue, Suite 700
Bethesda, Maryland 20814
Telephone:  (301) 657-0729
Facsimile:  (301) 347-1538
saberman@lerchearly.com

ROBERT HARRIS (FL 0817783)
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, FL 33131
Telephone:  (305) 371-0001
Facsimile:  (305) 371-0002
rharris@stackfernandez.com

**ATTORNEYS FOR APPELLEE PAXTON VAN LINES, INC.**

SCOTT A. COLE (FL 885630)
**COLE, SCOTT & KISSANE, P.A.**
9150 S. Dadeland Blvd., Suite 1400
Miami, FL 33156
Telephone: (305) 350-5346
Facsimile: (305) 373-2294
Scott.cole@csklegal.com

**ATTORNEYS FOR APPELLEE HILLDRUP COMPANIES, INC.**


BRYAN KNIGHT (GA 142401)
**KNIGHT PALMER LLC**
1360 Peachtree St. NE, Suite 1201
Atlanta, GA 30309
Telephone: (404) 228-4822
Facsimile: (404) 228-4821
bknight@knightpalmerlaw.com

THOMAS F. MURPHY (DC 464475)
**FRIEDLANDER MISLER, PLLC**
5335 Wisconsin Avenue, NW, Suite 600
Washington, DC 20015
Telephone: (202) 872-0800
Facsimile: (202) 857-8343
tmurphy@FMlaw.com

**ATTORNEYS FOR APPELLEE WESTERN EXPRESS FORWARDING, LLC**


ROBERT T. WRIGHT, JR. (FL 185525)
Robert.wright@fisherbroyles.com
**FISHER BROYLES, LLP**
1221 Brickell Ave., Suite 900
Miami, FL 33131
Telephone: (786) 873-4603
Facsimile: (786) 536-2838

IRENE ORIA (FL 484570)
Irene.oria@fisherbroyles.com
**FISHER BROYLES, LLP**
1221 Brickell Ave., Suite 900
Miami, FL 33131
Telephone: (786) 873-4603
Facsimile: (786) 536-2838

**ATTORNEYS FOR APPELLEE ABLE MOVING & STORAGE, INC.**

MICHAEL I. KESSLER (FL 117784)
**O'HAGAN MEYER**
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
Telephone:  (213) 306-1610
Facsimile:  (213) 306-1615
mkessler@ohaganmeyer.com

**ATTORNEYS FOR APPELLEE J.K. MOVING & STORAGE INC.**

MATTHEW LANGLEY (IL 6337129)          MICHAEL B. SILVERSTEIN (OH 0098036)
**BENESCH, FRIEDLANDER,**                 **BENESCH, FRIEDLANDER, COPLAN &**
**COPLAN & ARANOFF, LLP**                 **ARANOFF, LLP**
71 S Wacker Drive, Suite 1600         41 S High St., Suite 2600
Chicago, IL 60606                     Columbus, OH 43054
Telephone:  (312) 624-6408            Telephone:  (614) 223-9362
mlangley@beneschlaw.com               msilverstein@beneschlaw.com

**ATTORNEYS FOR APPELLEE DeWITT COMPANIES LIMITED LLC**

USCA Case No. 22-13340-D
*Sedona Partners, LLC v. Able Moving & Storage, Inc., et al*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE PURSUANT TO FRAP 26.1 AND 11TH CIR. R. 26.1-1

Pursuant to F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, Appellees, by and through their undersigned counsel, hereby disclose the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock:

1.   Abam, Ruddy, Attorney for Appellee New World International, Ltd.

2.   Able Moving & Storage, Inc., Appellee

3.   Adams, C. Quinn, Attorney for Appellee J. K. Moving and Storage, Inc.

4.   Akerman LLP (Attorneys for Appellee)

5.   Albert, Alan D., Attorney for Appellee J. K. Moving and Storage, Inc.

6.   Arpin International Group, Inc., Appellee

7.   Berger, Justin T., Attorney for Appellant Sedona Partners, LLC

8.   Berman, Stuart A., Attorney for Appellee Paxton Van Lines, Inc.

9.   Bloom, Hon. Beth, United States District Judge

10.  Borak, Robert M., Attorney for Appellee Paramount Transportations Systems

11.  Boutin, Kevin J., Attorney for Appellant Sedona Partners, LLC

C-1

USCA Case No. 22-13340-D
*Sedona Partners, LLC v. Able Moving & Storage, Inc., et al*

12. Bruner, Ghislaine Torres, Attorney for Appellee Cartwright International Van Lines, Inc.

13. Burke, Melanie M., Attorney for Appellee Hilldrup Companies, Inc.

14. Calderwood, James A., Attorney for Appellee Arpin International Group, Inc.

15. Cartwright International Van Lines, Inc., Appellee

16. Clark, Havan M., Attorney for Appellant Sedona Partners, LLC

17. Cole, Scott, Attorney for Appellee Hilldrup Companies, Inc.

18. Coleman American Moving Services, Inc , Appellee

19. Cuffman, Timothy J., Attorney for Appellee Hilldrup Companies, Inc.

20. DeWitt Companies Limited, LLC, Appellee

21. Ederi, Ariella J., Attorney for Appellee Coleman American Moving Services, Inc.

22. Eppelbaum, Sammy, Attorney for Appellee Paxton Van Lines, Inc.

23. Fagundez, Charo H., Attorney for Appellee Hilldrup Companies, Inc.

24. Fahimi, Sarvenaz J., Attorney for Appellant Sedona Partners, LLC

25. Fiore, Kristen M., Attorney for Appellee Cartwright International Van Lines, Inc.

26. Fischman, Noam B., Attorney for Appellee Cartwright International Van Lines, Inc.

USCA Case No. 22-13340-D

*Sedona Partners, LLC v. Able Moving & Storage, Inc., et al*

27. Gonzalez, Juan Antonio, United States Attorney for the Southern District of Florida, Attorney for United States of America

28. Gordon, Andrew Michael, Attorney for Appellee New World International, Ltd.

29. J. K. Moving and Storage, Inc., Appellee

30. Harris, Robert, Attorney for Appellee Paxton Van Lines, Inc.

31. Hill, Thomas C., Attorney for Appellee Coleman American Moving Services, Inc.

32. Hilldrup Companies, Inc., Appellee

33. Hubbard, Maria Fernanda, Attorney for Appellee Cartwright International Van Lines, Inc.

34. Kaplan, Aryeh L., Attorney for Appellee Coleman American Moving Services, Inc.

35. Kessler, Michael Isaac, Attorney for Appellee J. K. Moving and Storage, Inc.

36. Kiehn, Kristin D., Attorney for Appellee Hilldrup Companies, Inc.

37. Knight, Bryan, Attorney for Appellee Western Express Forwarding, LLC

38. Langley, Matthew J., Attorney for Appellee DeWitt Companies Limited, LLC

USCA Case No. 22-13340-D

*Sedona Partners, LLC v. Able Moving & Storage, Inc., et al*

39.  Lee, Stephen Chahn, Attorney for Appellee  DeWitt Companies Limited, LLC

40.  Meyer, Charles G., Attorney for Appellee J. K. Moving and Storage, Inc.

41.  Monaghan, Maura K., Attorney for Appellee Hilldrup Companies, Inc.

42.  Murphy, Thomas F., Attorney for Appellee Western Express Forwarding, LLC

43.  New World International, Ltd., Appellee

44.  Oria, Irene, Attorney for Appellee Able Moving & Storage, Inc.

45.  Otazo-Reyes, Hon. Alicia M., United States Magistrate Judge

46.  Pantelopoulos, Nicholas E., Attorney for Appellee Arpin International Group, Inc.

47.  Paramount Transportations Systems, Appellee

48.  Paxton Van Lines, Inc., Appellee

49.  Pelletier, Paul E., Attorney for Appellant Sedona Partners, LLC

50.  Perez, Lorayne, Attorney for Appellee Cartwright International Van Lines, Inc.

51.  Postman, Barry, Attorney for Appellee Hilldrup Companies, Inc.

52.  Rabin, Adam T. Attorney for Appellant Sedona Partners, LLC

53.  Sedona Partners, LLC, Appellant

USCA Case No. 22-13340-D
*Sedona Partners, LLC v. Able Moving & Storage, Inc., et al*

54.  Shapiro, Craig B., Attorney for Appellee Western Express Forwarding, LLC

55.  Silversmith, Jolyon A., Attorney for Appellee Arpin International Group, Inc.

56.  Silverstein, Michael B., Attorney for Appellee DeWitt Companies Limited, LLC

57.  Sims, Charles M., Attorney for Appellee J. K. Moving and Storage, Inc.

58.  Singleton, James, Owner of Appellee J.K. Moving and Storage, Inc.

59.  Singleton, Joe, Owner of Appellee J.K. Moving and Storage, Inc.

60.  Sorel, Justin C., Attorney for Appellee Hilldrup Companies, Inc.

61.  Spector, Andrew R., Attorney for Appellee Paramount Transportations Systems

62.  Stein, Francesca, Attorney for Appellee Hilldrup Companies, Inc.

63.  Torres Bruner, Ghislaine G., Attorney for Appellee Cartwright International Van Lines, Inc.

64.  United States Department of Justice, The

65.  United States Department of State, The

66.  United States General Services Administration, The

67.  Wansac, Alexis N., Attorney for Appellee Coleman American Moving Services, Inc.

USCA Case No. 22-13340-D

*Sedona Partners, LLC v. Able Moving & Storage, Inc., et al*

68.  Weinkle, James, Assistant United States Attorney, Southern District of Florida, Attorney for United States of America

69.  Western Express Forwarding, LLC , Appellee

70.  Wright, Robert T., Jr., Attorney for Appellee Able Moving & Storage, Inc.

71.  Wyman, James H., Attorney for Appellee New World International, Ltd.

72.  Yingling, Andrew S., Attorney for Appellee Arpin International Group, Inc.

73.  Zeeck, Brian R., Attorney for Appellee New World International, Ltd.

None of the entities in this case has a parent company or is a public company. There are no known stock ticker symbols or publicly traded entities among these parties.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal does not warrant oral argument. It presents straightforward legal issues that are controlled by well-established precedent and are adequately addressed in the parties' briefs. The order on review is well-reasoned and consistent with this Court's precedent, which makes clear that a relator cannot misuse the discovery process to cure defective fraud claims. Permitting Appellant Sedona Partners LLC ("Relator") to misuse the discovery process to resurrect its claims in a False Claims Act ("FCA") case would frustrate the gatekeeping functions of Federal Rule of Civil Procedure 9(b), which mandate the pleading of fraud claims with specificity.

Moreover, as explained in greater detail below, this Court can affirm the dismissal with prejudice of Relator's FCA claims on multiple alternative grounds in the record.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE  STATEMENT ................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF CONTENTS......................................................................................... ii

TABLE OF AUTHORITIES ...................................................................................v

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE...................................................................................2

STATEMENT OF FACTS .........................................................................................3

    *Factual Background* ..........................................................................................3

        A. The Parties .....................................................................................3

        B.  U.S. State Department Relocation Services................................4

        C. The "America First" Policy ..........................................................4

        D. Bidding Process ............................................................................6

        E.  Requests for Foreign-Flag Waivers............................................6

    *Litigation Background* ......................................................................................8

        A. Allegations Presented by Relator ................................................8

        B.  Final Dismissal...........................................................................14

SUMMARY OF THE ARGUMENT .....................................................................15

ii

ARGUMENT ...........................................................................................18

I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
      IN STRIKING THE ALLEGATIONS IN THE SAC THAT
      RELATOR OBTAINED THROUGH DISCOVERY, OR ERR
      IN DISMISSING THE SAC WITH PREJUDICE AS A RESULT
      .......................................................................................................18

      A.    *Rule 9(b) Applies to FCA Cases to Discourage Frivolous
            Lawsuits*.................................................................................18

      B.    *The District Court Did Not Abuse Its Discretion in Applying
            Bingham, Which Was Correctly Decided* ......................................20

      C.    *Commencement of Discovery Does Not Vitiate Rule 9(b)
            Considerations* ...............................................................25

      D.    *The District Court Did Not Fail to Address Purportedly
            Contrary Cases*.................................................................27

      E.    *The Court Properly Struck the Impermissible Information
            Obtained In Discovery Under Its Inherent Power*.........................29

      F.    *The Material Obtained from Third-Party Maersk is Equally
            Impermissible* ...............................................................30

      G.    *Public Policy Does Not Warrant Reversal* ......................................32

II.   MULTIPLE OTHER GROUNDS WARRANT AFFIRMANCE
      OF THE DISTRICT COURT'S DISMISSAL WITH
      PREJUDICE OF THE SAC AS A MATTER OF LAW ....................34

      A.    *The SAC Failed Because It Did Not Allege that the TSPs
            Knowingly Submitted Materially False Claims or Statements* .......34

      B.    *The SAC Failed to Allege Scienter or Falsity*................................37

CONCLUSION.........................................................................................42

CERTIFICATE OF COMPLIANCE.......................................................46

CERTIFICATE OF SERVICE ...................................................................46

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>CASES</u>

*A1 Procurement, LLC v. Hendry Corp.*, No. 11-23582-CIV-ALTONAGA/
    Simonton, 2012 WL 12844745 (S.D. Fla. 2012)..................................................41

*Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008)...........................20

*Battle v. CLI Atlas Deerwood LLC*, 2021 WL 3616108 (C.D. Cal. 2021)..............28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).............................................38

*\*Bingham v. HCA Inc.*, 783 F. App'x 868 (11th Cir. 2019)............................*passim*

*Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340 (11th Cir. 2007) ..............22

*Bullock v. U.S.*, 655 F. App'x 739 (11th Cir. 2016) .................................................23

*Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267 (11th Cir. 2018) .......34, 37

*Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562
    (11th Cir. 1994)................................................................................................18, 30

*\*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) .......................34, 36, 37

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x
    487 (11th Cir. 2009)..............................................................................................27

*Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Georgia, LLC*,
    853 F. App'x 496 (11th Cir. 2021) ......................................................................37

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) .....................................23

*Haynes v. JPMorgan Chase Bank, N.A.*, 466 F. App'x 763 (11th Cir. 2012).........27

*Holland v. Gee*, 677 F.3d 1047 (11th Cir. 2012) .....................................................25

*Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318 (11th Cir. 2009) ............................34

*Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176 (3d Cir. 2001)..................33

*In re BP Lubricants USA Inc.*, 637 F.3d 1307 (Fed. Cir. 2011)..............................26

*In re Rasbury*, 24 F.3d 159 (11th Cir. 1994) ..........................................................22

*Knous v. U.S.*, 981 F. Supp. 2d 1365 (N.D. Ga. 2013)............................................29

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012)................................25

*Maersk Line, Ltd. v. U.S. Dept. of State,* 1:21-cv-00125-APM
    (D.D.C. filed Jan. 14, 2021).........................................................................11, 12

*McNamara v. Gov't Employees Ins. Co.*, 30 F.4th 1055
    (11th Cir. 2022).............................................................................................23, 24

*Paez v. Mulvey*, 915 F.3d 1276 (11th Cir. 2019) ....................................................35

*\*Safeco Ins. Co. of America v. Burr.*, 551 U.S. 41 (2007) ................................15, 40

*State Exchange Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982)........................29

*To the Secretary of State*, B-124927, 1956 WL 3381
    (Comp. Gen. Jul. 19, 1956)................................................................................41

*\*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176
    (2016) ....................................................................................................36, 38, 41

*\*Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039 (11th Cir. 2015) .........................38

*U.S. ex rel. Aquino v. Univ. of Miami*, 250 F. Supp. 3d 1319
    (S.D. Fla. 2017).................................................................................................37

*\*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006)..........*passim*

*\*U.S. ex rel. Clausen v. Laboratory Corporation of America*,
    290 F.3d 1301 (11th Cir. 2002) .................................................................*passim*

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD,
    2013 WL 2303768 (N.D. Ga. 2013) ...........................................................24, 28

*U.S. ex rel. Galmines v. Novartis Pharmaceuticals Corp*,
   88 F. Supp. 3d 447 (E.D. Pa. 2015) .................................................................28

*U.S. ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186
   (8th Cir. 2010) ......................................................................................40, 41

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220
   (1st Cir. 2004) ......................................................................................20, 26

*U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783 (11th Cir. 2014) ....................21

*U.S. ex rel. Laird v. Lockheed Martin Engineering & Science Servs. Co.*,
   491 F.3d 254 (5th Cir. 2007) ...............................................................36

*U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x. 693
   (11th Cir. 2014) ..................................................................................41

*U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148
   (11th Cir. 2017) ..................................................................................39

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340
   (4th Cir. 2022) ...............................................................................38, 40

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (4th Cir. 2022).............40

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue
   Shield of Ga., Inc.*, 755 F.Supp. 1040 (S.D. Ga. 1990) .......................................20

*U.S. ex rel. Underwood v. Genentech*, 720 F. Supp. 2d 671 (E.D. Pa. 2010) .........32

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370
   (4th Cir. 2008) ..................................................................................41

*U.S. v. HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. 2018) ........................34

*U.S. v. King-Vassel*, 728 F.3d 707 (7th Cir. 2013) .................................................38

*U.S. v. Marshall Medical Center*, 2015 WL 2235461 (E.D. Cal. 2015)................28

*U.S. v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561
  (M.D. Tenn. 2021) ........................................................................29, 32

*Whipple v. Johnson*, 2020 WL 8615598 (11th Cir. 2020).......................................29

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001)...............................21

## STATUTES AND CODE PROVISIONS

31 U.S.C. § 3729(a)(1)....................................................................................18

31 U.S.C. § 3729(a)(1)(A) ...............................................................................9

31 U.S.C. § 3729(a)(1)(B) ...............................................................................9

31 U.S.C. § 3729(b)(1)(A) ............................................................................. 38

31 U.S.C. § 3729(b)(2)(A) ..............................................................................35

35 U.S.C. § 292 .............................................................................................. 26

46 U.S.C. § 55302(a) .......................................................................................5

46 U.S.C. § 55305(b) .......................................................................................5

## RULES AND REGULATIONS

11th Cir. R. 26.1-1 .......................................................................................C-1

Fed. R. App. P. 26.1 .....................................................................................C-1

Fed. R. App. P. 32(a)(5)..................................................................................46

Fed. R. App. P. 32(a)(6)..................................................................................46

Fed. R. App. P. 32(a)(7)(B) ...........................................................................46

Fed. R. App. P. 32(a)(7)(B)(iii) ......................................................................46

Fed. R. Civ. P. 8 ............................................................................................35

Fed. R. Civ. P. 9(b) ...........................................................*passim*

Fed. R. Civ. P. 10(a)................................................................41

Fed. R. Civ. P. 12(f) ................................................................29

14 FAM § 582.1 .........................................................................6

14 FAM § 582.2-3......................................................................7

14 FAM § 616.1 .......................................................................40

14 FAM § 616.1(a)(1)...............................................................12

14 FAM § 616.2 .......................................................................40

46 C.F.R. § 381.5 ......................................................................6

48 C.F.R. § 52.247–64 ..............................................................6

## OTHER AUTHORITIES

*False Claims Act Implementation: Hearing Before the Subcomm. On Admin.*
   *Law & Gov. Relations of the House Comm. on the Judiciary*, 101st Cong.,
   2d Sess. 3 (1990) ........................................................... 18-19

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the District Court erred, following its dismissal of an earlier complaint for failure to comply with Rule 9(b), in dismissing Relator's Corrected Second Amended Complaint ("SAC"), or abused its discretion in striking from the SAC allegations based on documents that Relator had obtained through discovery from parties and third parties to this case.

II.    Whether this Court should affirm the dismissal with prejudice of the SAC as a matter of law on multiple alternative grounds, including the SAC's (i) failure to allege that Appellees knowingly submitted materially false claims or statements in support of payment; and (ii) failure to allege scienter or falsity sufficient to support a FCA claim.

1

## STATEMENT OF THE CASE[2]

This appeal stems from the dismissal of a FCA case in which Relator contends, without substantiation, that Appellees should have but did not use U.S.-flagged ocean transport vessels to move cargo overseas. The eight Appellees are Transportation Service Providers ("TSPs") that contract with the United States Department of State ("DOS") to move household goods for DOS employees who move to and from overseas posts. A move involves three basic steps. TSPs pick up cargo from the home of a DOS employee and ship it by land to a port. TSPs then contract for an ocean transport vessel to move the employee's belongings to the destination country. Finally, TSPs move the employee's belongings (typically by land) from the foreign port to the employee's new home.

This case relates solely to the middle, ocean leg, of the transport. Relator contends that the TSPs defrauded the United States by using foreign-flagged vessels rather than U.S.-flagged vessels for certain segments of ocean transport. Although U.S.-flagged vessels may not have been available at the ports from which the cargo left the United States, Relator posits that the TSPs could have identified other ports around the United States where U.S.-flagged vessels *may have been* available. Relator argues that this obligation existed irrespective of where those vessels were

---

[2] This brief cites to the District Court docket entries by page number (*i.e.*, [Doc. 1 at 1]) and Relator's Principal Brief by page number (*i.e.*, [IB at 1]).

docked, and without considering (i) the cost of transshipment, (ii) the capacity of the United States ship to carry cargo, or (iii) the cost of that ocean transport. By failing to transship the cargo in search of a U.S.-flagged vessel, Relator contends, the TSPs defrauded the United States government and violated the FCA.

Relator's allegations lack merit. The District Court dismissed Relator's "First Amended Complaint" based on a number of deficiencies including, among others, Relator's failure to satisfy the rigors of Rule 9(b). The District Court provided Relator a final chance to cure its deficient claims by filing the SAC. Relator failed. Relator improperly derived the additional detail alleged in the SAC entirely from discovery materials. The District Court struck those additional allegations and, having already dismissed Relator's allegations once based on Rule 9(b), the District Court dismissed the SAC with prejudice.

The District Court did not abuse its discretion in striking those paragraphs of the SAC derived from discovery. Nor did it err in dismissing Relator's otherwise deficient pleading a second time.

## STATEMENT OF FACTS

### *Factual Background*

### A.    The Parties

The TSPs contract to move belongings of DOS employees to and from overseas posts. The TSPs contract with DOS through the government's Centralized

Household Goods Traffic Management Program ("CHAMP"). [Doc. 222 ¶ 32] Relator is a corporate entity that represents itself to be an ". . . insider in the TSP business . . ." with ". . . direct and independent knowledge of the information on which these allegations are based." [Doc. 222 ¶ 16] Throughout the proceedings below, Relator repeatedly refused to identify its members, individual(s) who purportedly hold the information imputed to Relator, the source of its allegations, or even organizational details like the state in which or the date on which it was organized.

### B.    U.S. State Department Relocation Services

DOS has 307 embassies, consulates, and diplomatic missions around the world. [Doc. 222 ¶ 32] DOS civilian employees are often required to move from one posting to another. [*Id.* ¶ 57 (estimating DOS arranges over 18,000 international shipments per year)] DOS works with the United States General Service Administration ("GSA") to assist employees in relocating through CHAMP. [*Id.* ¶¶ 32-34] To facilitate relocation, the United States contracts with shipping companies to transport employees' household goods. [*Id.* ¶ 32] The GSA has approved each TSP for international or domestic shipping routes. [*Id.* ¶¶ 2, 34]

### C.    The "America First" Policy

The TSPs are subject to an "America First" policy. [Doc. 222 ¶ 2] The Merchant Marine Act of 1936 requires that officers and employees of the United

States government travel and transport personal effects on U.S.-flagged vessels "unless the necessity of the mission requires the use of a foreign vessel." 46 U.S.C. § 55302(a). Cargo shipped under the CHAMP program is also subject to the 1954 Cargo Preference Act (the "Act"), which requires that at least 50% of the gross tonnage of government-generated cargo be transported on privately owned U.S.-flagged vessels to the extent they are available at fair and reasonable rates. 46 U.S.C. § 55305(b).

Despite being the intended beneficiaries of cargo-preference laws, the U.S.-flagged international fleet has thinned dramatically in recent years, in part due to the higher costs of operating a U.S.-flagged vessel. [Doc. 153-1] In 1955, when the Act was passed, the U.S.-flagged international fleet consisted of 850 ships that carried about 25% of U.S. foreign trade. [Doc. 153-2] As of 2015, the number of vessels stood over 90% lower, at 83 vessels, with a 1% share of the United States foreign trade market. [*Id.*]; [Doc. 153-1]; [Doc. 153-3]; [Doc. 149 ¶ 52 (referring to "relatively small set of ocean shipping companies")] Container ships, the ships used to transport household goods at issue in this case, comprise roughly one half of this already small U.S.-flagged fleet of ocean transport vessels. [Doc. 153-3 at Table 3]

**D.    Bidding Process**

As part of the CHAMP program, GSA solicits rate proposals for domestic and international shipping lanes. [Doc. 222 ¶ 36] The TSPs and others submit proposals through GSA's Transportation Management Services Solution ("**TMSS**") 2.0 system. Following each bidding cycle, the TSPs and other authorized users can query TMSS 2.0 to view the submitted rates. *See, e.g*., [Doc. 222 ¶ 63 (describing bids obtained from TMSS query)]. Bids are evaluated pursuant to GSA's Value Index system, which assesses the TSPs' prior performance and the attractiveness of their rates, among other things. [*Id*. ¶ 39] GSA then awards contracts for specified shipping lanes. [*Id*. ¶ 37]

**E.    Requests for Foreign-Flag Waivers**

Consistent with the America First policy and cargo preference laws, the TSPs must use U.S.-flagged vessels unless such vessels are not available for timely shipment at rates that are fair and reasonable, or for other substantially valid reasons. [Doc. 222 ¶ 29]; 48 C.F.R. § 52.247–64; 46 C.F.R. § 381.5. DOS's Foreign Affairs Manual ("FAM") provides that U.S.-flagged vessels must be used "unless the necessity of the mission requires the use of vessels under a foreign flag." [Doc. 153-4 (14 FAM § 582.1)] Nonetheless, during the time period relevant for this matter (2008-2018), the GSA explicitly prohibited "indirect

6

routing" or transshipping of the sort alleged by Relator. *See, e.g.*, [Doc. 251 (Report and Recommendation at 15 (citing Doc. 226-13 at 3-3, 3-6))].

The use of a foreign-flagged vessel may be warranted in various circumstances, including where U.S.-flagged vessels do not operate between ports servicing the points of origin and destination that are reasonably accessible by adequate surface transportation, where cargo space is unavailable, to avoid unreasonable delays, when a shipment would involve more than two transshipment points, or when an embassy requests earlier arrival, among other reasons. *See id.*; *see also* [Doc. 153-5 (U.S. Dep't of State, Office of Logistics Mgmt., "Foreign Flag Waiver Approval Process," Aug. 27, 2019) (hereinafter "**DOS Presentation**") at 2, 7]; [Doc. 222 ¶ 41].

TSPs seeking a waiver of the U.S.-flagged vessel requirement must submit to DOS a form entitled "Request for Approval of Use of a Foreign Flag Vessel." [Doc. 222 at ¶¶ 41, 46]; [Doc. 153-5 (DOS Presentation at 4)] In requesting a waiver, the TSP is required to certify that the use of a foreign vessel is necessary to meet delivery requirements and to provide an accompanying explanation. [*Id.* at ¶ 46] If the waiver is approved, a DOS official certifies the relevant facts in a "Justification Certificate for Use of Foreign Flag Waiver." [*Id.* ¶ 44]; [Doc 153-5 (DOS Presentation at 5)]; 14 FAM § 582.2–3. The TSP also submits to GSA a separate "Justification Certificate for Use of a Foreign-Flag Vessel." [Doc. 222

7

¶¶ 46-47] As a result of the scarcity of U.S.-flagged vessels, foreign-flagged waiver requests are a frequent occurrence. [*Id.* ¶¶ 59, 62]

*Litigation Background*

**A.     Allegations Presented by Relator**

Relator filed its initial FCA complaint under seal on August 4, 2020. [Doc. 1] The government declined to intervene. [Doc. 9] The matter was unsealed on May 4, 2021. [Doc. 10] Relator then filed its First Amended Complaint (the "FAC") in August 2021. [Doc. 218 at 3]

The TSPs moved to dismiss the FAC.[3] Ultimately, the District Court dismissed the FAC because it was an invalid shotgun pleading, which also failed to plead fraud pursuant to Rule 9(b). [Doc. 218 at 13 (noting the absence of specific false waivers, allegations regarding the falsity of such waivers, or scienter)] The District Court emphasized that Relator's claim to be an "industry insider" did not provide sufficient grounds to credit Relator's allegations absent facts pled with particularity because Relator had no alleged knowledge of any individual TSP (or, here, nine individual TSPs). [*Id.* at 14] The District Court nevertheless granted Relator leave to amend.

---

[3] The defendants below included the eight Appellees that submit this brief, plus Paramount (*see* n.1) and another TSP (Coleman American Moving Services, Inc.) that was dismissed from this appeal.

8

Relator filed its SAC in February 2022. [Doc. 222] In Count One, Relator asserted a FCA "presentment" claim—presenting false claims to the federal government pursuant to 31 U.S.C. § 3729(a)(1)(A). In Count Two, Relator asserted a FCA "use claim"—using false records material to payment or approval of false claims pursuant to 31 U.S.C. § 3729(a)(1)(B). Relator alleged, with scant evidence provided to support its allegation, that the TSPs presented "low ball" bids between 2008-2018 to obtain shipping contracts from DOS. [Doc. 222 ¶¶ 6, 57-59, 60-79] Relator alleged that these low bids would have cost the TSPs more money if they had to use U.S.-flagged vessels for ocean transport. [Doc. 222 ¶¶ 64-79]

Relator alleged that the TSPs all sent materially inaccurate foreign-flagged waiver requests to DOS to permit the TSPs to use cheaper foreign-flagged vessels for given shipments identified in the SAC. [Doc. 222 ¶¶ 86-196] In addition to costing the American taxpayers less, Relator contended that this conduct permitted the TSPs to turn a profit. [Doc 222 ¶ 80] But Relator did not allege any calculable damages to the government.

Relator also added new allegations found at ¶¶ 84-196, which attempted (but failed) to demonstrate on a granular level for each TSP specific instances in which a TSP (allegedly) made false statements to DOS. For example:

- **¶ 84 (Able Moving & Storage, Inc. ("Able"))** – Relator alleges that for shipment number DC 18204827, leaving New York for Karachi, Able could have but failed to ship the cargo from New York to Newark and then use a U.S.-flagged vessel. [Doc. 222 ¶ 84] Relator

does not allege that the U.S.-flagged vessel allegedly leaving Newark had space to carry the cargo in DC 18204827 and that it was able to provide such space to Able at a reasonable cost.

- **¶ 96 (Arpin International Group, Inc. ("Arpin"))** – Relator alleges that for shipment number DC 18289720, leaving Baltimore for Mombasa, Arpin could have but failed to ship the cargo from Norfolk (several hours south of Baltimore) and then use a U.S.-flagged vessel. [Doc. 222 ¶ 96] Relator does not allege that the U.S.-flagged vessel allegedly leaving Norfolk had space to carry the cargo in DC 18289720 and that it was able to provide such space to Arpin at a reasonable cost.

- **¶ 106 (Cartwright International Van Lines, Inc. ("Cartwright"))** – Relator alleges that for shipment number DC 18974238, leaving New York for Rotterdam, Cartwright could have but failed to ship the cargo from Norfolk (almost seven hours south of New York City) and then use a U.S.-flagged vessel. [Doc. 222 ¶ 106] Relator does not allege that the U.S.-flagged vessel allegedly leaving Norfolk had space to carry the cargo in DC 18974238 and that it was able to provide such space to Cartwright at a reasonable cost.

[Doc. 222]

Relator did not possess any of the information found in SAC ¶¶ 86-196 when it filed its FAC or when it served its Federal Rule of Civil Procedure 26(a) disclosures. [Doc. 226-2 at 5-6]; *see also* [Doc. 252 at 39:19-41:22 (conceding that all claims against Able, Cartwright, and J.K. Moving and Storage, Inc. ("J.K. Moving") derived from discovery without which Relator would have no claims); 159:24-162:8 (same); 46:17-23 (waiver forms from other Appellees derive from Maersk Freedom of Information Act ("FOIA") requests)]. Relator derived the information alleged in these paragraphs exclusively from discovery. [*Id.*]

10

Cartwright, J.K. Moving, and Able produced documents that included shipping activity reports, bills of lading, and justification for foreign flag waiver requests. As reflected in the charts and documents attached as [Docs. 226-3, 226-4, 226-5], Relator utilized these documents in drafting the SAC, even to the point of indiscriminately copying punctuation, capitalization, and spelling errors that appear in the documents.[4] Examples follow:

| SAC Ex. 4 (Doc. 222-4) | CARTWRIGHT_000145 |
|---|---|
| No US Flag available to Arica/La Paz in order to make RDD. | No US Flag available to Arica/La Paz in order to make RDD. |

| SAC Ex. 8 (Doc. 222-8) | JKM000592 |
|---|---|
| USF not available, DA in Skopje will retrieve [sic] container at port of Thessaloniki. | USF not available, DA in Skopje will retrieve [sic] container at port of Thessaloniki. |

| SAC Ex. 2 (Doc. 222-2) | Able_000002 |
|---|---|
| POST DOES NOT WANT MAERSK USED. NO OTHER US FLAG OPTIONS. | POST DOES NOT WANT MAERSK USED. NO OTHER US FLAG OPTIONS. |

On October 12, 2021, Relator served a third-party subpoena on Maersk. [Doc. 226-6] Maersk had sued DOS over a FOIA request seeking, among other things, all foreign flag waiver requests under the GSA HTOS Program (*e.g.*, CHAMP). *Maersk Line, Ltd. v. U.S. Dept. of State,* 1:21-cv-00125-APM (D.D.C. filed Jan. 14, 2021)

---

[4] With respect to Cartwright, every example of an allegedly problematic shipment cited by Relator in [Doc. 222 ¶¶ 106-114] correlates to specific documents that Cartwright produced to Relator on December 15, 2021. The same is true with respect to J.K. Moving. [Doc. 222 ¶¶ 143-152]

("*Maersk FOIA Case*") [Doc. 149]. DOS produced documents to Maersk responsive to the FOIA request, including information about foreign flag waivers under the CHAMP program. *See* [Doc. 38 (*Maersk FOIA Case* - status update)]. Regardless of whether Maersk is affiliated with Relator or filed its FOIA action to advance this FCA case, Relator received the fruits of Maersk's FOIA request. [Doc. 226-6 at 12] Indeed, the TSPs' shipping information, including the "unique number assigned to a shipment" [Doc. 222-1], could only have come from the TSPs' files or, through FOIA, from the government's files. There is no other source for such information.

Even if the District Court had considered the new factual information pled in SAC ¶¶ 86-196, those allegations were devoid of critical information necessary to sustain a FCA claim. Those allegations failed to allege that (i) the alternative U.S.-flagged vessels actually had the capacity to accept the cargo for each cited shipment, or (ii) that the cost of using the alleged alternative route was reasonable.

Moreover, the distances that Relator posited the TSPs should have transshipped cargo varied greatly.[5] Two examples in the SAC highlighted this point. In one instance, Relator alleged that Appellee DeWitt Companies Limited LLC

---

[5] The applicable guidelines from the United States General Services Administration Household Goods Tender of Service Manual (GSA HTOS) explicitly prohibit "indirect routing" or transshipping of the sort alleged by Relator. *See, e.g.*, [Doc. 251 at 15 (citing Doc. 226-13 at 3-3, 3-6)]. To circumvent the government's own guidance, Relator cites other allegedly contradictory guidance that suggests transshipment might be necessary. [Doc. 238 (citing 14 FAM § 616.1(a)(1) (2018))]

ought to have shipped DC 18365463 more than 2,700 miles across the United States, from Long Beach, California to Norfolk, Virginia, to use a US-flagged ocean transport vessel. [Doc. 222 ¶ 120] In another instance, Relator alleged that Appellee J.K. Moving erred by shipping DC 18601000 from Oakland, California to Abu Dhabi, United Arab Emirates. [Doc. 222 ¶ 143] Relator alleged that J.K. Moving erred in shipping this cargo directly to Abu Dhabi on a foreign-flagged vessel. Instead, Relator alleged that J.K. Moving should have transshipped the cargo by land close to 2,000 miles from Oakland, California to Houston, Texas, and then used a U.S.-flagged vessel to move the cargo to Jebel Ali, United Arab Emirates (only to transship the cargo again by land from Jebel Ali to Abu Dhabi). [*Id.*]

The details missing from SAC ¶¶ 86-196 were as remarkable as the lengths Relator would have cargo travel in search of a potential U.S.-flagged vessel. SAC ¶¶ 86-196 did not allege that the purported alternative routes had (i) space for the cargo, and (ii) would offer to provide such space to the TSPs at a reasonable cost. Not one of the examples alleged at SAC ¶¶ 86-196 included an actual claim for, or false statement regarding, payment. [Doc. 251 at 12] In all but two instances alleged by Relator during the relevant (2008-2018) time period, there was indisputably ***no*** U.S.-flagged vessel available at the departure port and the government approved a waiver request.

13

### B. Final Dismissal

The TSPs moved to dismiss the SAC and to strike allegations derived from discovery. [Doc. 226] The TSPs relied on the same grounds upon which the District Court dismissed the FAC. The TSPs also relied on *Bingham v. HCA Inc.*, 783 F. App'x 868 (11th Cir. 2019), which held that a FCA plaintiff cannot use materials obtained through discovery to satisfy the Rule 9(b) heightened-pleading requirements.

In the second Report and Recommendation (the "Second R&R"), the Magistrate Judge found that Relator's SAC inappropriately relied on discovery. [Doc. 251 at 10] The Magistrate Judge also found that Relator still failed to plead a presentment claim:

> Relator simply bootstraps the alleged falsity of the Waiver Requests to its 'presentment' claim, contending that their attachment to foreign flag vessel shipping invoices, as required by FAM, renders the claims for payment false. However, this does not satisfy the essential element of falsity in a 'presentment' claim.

[Doc. 251 at 12]

The Magistrate Judge found that Relator's "use" claim was still deficient because Relator relied on a reasonable interpretation of the GSA HTOS guidance that precluded "indirect routing" or transshipment of the sort alleged by Relator. [Doc. 251 at 15] Put another way, Relator based its contention on the fact that the TSPs interpreted the GSA HTOS incorrectly or, at a minimum, were reckless in their

interpretation. The Magistrate Judge applied *Safeco Ins. Co. v. Burr*, 551 U.S. 41, 69 (2007), and concluded that, ". . . Relator's bald allegation that Defendants recklessly disregarded the potential availability of U.S. Flag vessels does not satisfy the FCA's rigorous scienter requirement." [Doc. 251 at 15 (citations omitted)]

The District Court agreed. [Doc. 265] The District Court focused specifically on *Bingham,* holding that "[t]he import of *Bingham* is to prevent the filing of frivolous complaints and post-hoc attempts to gain the necessary information to substantiate the complaints through discovery. *Bingham* makes no distinction between the manner in which the information was obtained during discovery." [Doc. 265 at 14] The District Court did not disagree with any other aspect of the Second R&R. It merely held further analysis to be unnecessary given the District Court's decision to strike the allegations and dismiss the SAC with prejudice. [*Id.*]

## SUMMARY OF THE ARGUMENT

The SAC attempted to cure Relator's Rule 9(b) deficiency by inserting 112 new paragraphs of detail that Relator had gleaned from discovery. These new paragraphs detailed specific shipments that Relator contended (without substantiation) could have used U.S.-flagged ocean transport. The District Court struck these allegations because Relator relied on discovery to allege them, thereby violating the principles and policies underlying Rule 9(b). Permitting a relator to use

the discovery process to cure a defective pleading would constitute an impermissible end-run of the gatekeeping functions of Rule 9(b)—particularly in FCA cases.

The District Court properly relied on *Bingham*. *Bingham* derives from and is consistent with the well-entrenched precedent in this circuit and others that Rule 9(b) applies to FCA cases to discourage frivolous lawsuits. *Bingham* is a well-reasoned decision and based on facts that closely parallel this case. Nor does it matter whether Relator received the "discovery" it relied upon to cure its defective FAC from the TSPs directly (as in the case of Able, Cartwright, and J.K. Moving) or from a third-party subpoena to a shipping company (Maersk) during discovery. The principles that underscore *Bingham*, Rule 9(b), and a district court's inherent power to strike impermissible material apply with equal force. Because the new factual information pled in the SAC was devoid of critical information necessary to sustain a FCA claim, the District Court properly dismissed the SAC with prejudice.

Several independent bases in the record also support affirmance of the District Court's judgment. First, Relator has failed to identify a single false claim or statement that the TSPs made to the government. Every transport alleged in the SAC was subject to a duly-authorized "foreign-flag waiver," which plainly authorized the TSPs to use foreign-flagged ocean transport. Every waiver request was supported by a duly authorized (and accurate) "Justification Certificate for Use of Foreign Flag Waiver."

Although Relator baldly asserts that the TSPs used false statements in securing these foreign-flag waivers [IB at 5-6], that allegation is nowhere substantiated in the allegations of the SAC. The waiver requests attest to the absence of U.S.-flagged ocean transport at the port where the cargo resided. Relator does not allege that these statements are inaccurate. Instead, Relator contends that TSPs had a duty to (i) hunt for U.S.-flagged vessels wherever they may have been in any port around the country, or (ii) indirectly route cargo to alternative ports overseas in turn to find another ship to take the cargo to its final destination. Such transshipment and/or indirect routing mandates alleged by Relator ignore GSA guidelines that explicitly prohibit the sort of routes alleged by Relator. Finally, the SAC does not contain a single allegation to support the capacity of the alternative U.S.-flagged vessels to take the cargo alleged at a reasonable cost.

Second, Relator did not allege facts that fulfill the FCA's scienter requirement. Relator did not allege a single instance in which a TSP sought a waiver knowing of a U.S.-flagged vessel's availability to ship cargo from the port at which the cargo resided. Government guidance plainly instructed TSPs ***not to transship*** cargo. Yet, inexplicably, Relator's allegations were all predicated on the need to transship cargo (sometimes clear across the United States). Relator did not explain (nor can it explain) how (i) accurately filling out waiver forms, and/or (ii) complying

17

with government guidance in the shipment of cargo could constitute a FCA violation.

## ARGUMENT

I.    **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN STRIKING THE ALLEGATIONS IN THE SAC THAT RELATOR OBTAINED THROUGH DISCOVERY, OR ERR IN DISMISSING THE SAC WITH PREJUDICE AS A RESULT.**

A.    *Rule 9(b) Applies to FCA Cases to Discourage Frivolous Lawsuits.*

The FCA subjects to civil liability any person who knowingly presents or causes to present a false claim for payment to the United States government. *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (discussing 31 U.S.C. § 3729(a)(1)). The submission of a false claim is the critical fact supporting a FCA allegation. *Id.* (citing *U.S. ex rel. Clausen v. Lab Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Absent an alleged false claim, there can be no actionable damage. *Id.* A FCA claim cannot exist unless a defendant has asked the government to pay money that it does not otherwise owe. *Id.* Congress sought to bar FCA actions by parasitic or opportunistic relators who did not bring forth original, detailed allegations of fraud against the government. Congress has recognized the "tension between . . . encouraging people to come forward with information and . . . preventing parasitic lawsuits." *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 (11th Cir. 1994) (quoting *False Claims Act Implementation: Hearing*

*Before the Subcomm. On Admin. Law & Gov. Relations of the House Comm. on the Judiciary*, 101st Cong., 2d Sess. 3 (1990)).

Rule 9(b) mandates that allegations of fraud be pled with particularity. *Id.* (particularity means time, place, and substance of the defendants' alleged fraud—when the fraud occurred and who committed the fraud) (citations omitted). It is not enough to describe specific conduct and, from that conduct, conclude that claims requesting improper payments must have been submitted. *Atkins*, 470 F.3d at 1357 (citing *Clausen*, 290 F.3d at 1311). Conclusory allegations do not replace the averment of an actual (allegedly) false claim.

This Court has held that applying Rule 9(b) to FCA claims "ensures that the relator's strong financial incentive to bring [a FCA] claim—the possibility of recovering between fifteen and thirty percent of a treble damages award—does not precipitate the filing of frivolous suits." *Atkins*, 470 F.3d at 1360. Indeed, "[t]he particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *Id.* at 1359 (internal quotation marks omitted). As explained in *Clausen*, 290 F.3d at 1313 n.24, Rule 9(b) serves several important purposes in FCA cases, including protecting a defendant's reputation and discouraging unsubstantiated windfalls to a plaintiff:

> When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' good will and reputation that is, at best, missing some of its core underpinnings,

19

and, at worst, are baseless allegations used to extract settlements. This
is especially so in cases involving the False Claims Act, which provides
a windfall to the first person to file and permits recovery on behalf of
the real victim, the Government.

*Id.* (citing *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1053 (S.D. Ga. 1990)); *see also U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[A] *qui tam* relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery.").[6]

### B. *The District Court Did Not Abuse Its Discretion in Applying Bingham, Which Was Correctly Decided.*

Relator mistakenly contends that the District Court abused its discretion in relying on *Bingham* as binding precedent. [IB at 16-20] The District Court correctly acknowledged that *Bingham* is not binding precedent [Doc. 265 at 12], but was well within its discretion to apply *Bingham*. *Bingham* is analogous to this case and reflects well-entrenched principles underlying Rule 9(b), as explained in binding precedent such as *Atkins* and *Clausen*.

In *Bingham*, this Court acknowledged that district courts should freely grant leave to amend pleadings, but "amendments that include material obtained during discovery, prior to a final decision on the motion to dismiss, may not be appropriate

---

[6] *Karvelas* was abrogated on other grounds by *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008).

in cases to which the height[en]ed pleading standard of Rule 9(b) applies if the amendment would allow the plaintiff to circumvent the purpose of Rule 9(b)." *Id*. at 876 (citing *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 804-05 (11th Cir. 2014)). In other words, as the District Court here noted, "the striking of allegations based on materials obtained during discovery is proper if it prevents relators from circumventing the particularity requirement of Rule 9(b)." [Doc. 265 at 12 (quoting *Bingham*, 783 F. App'x. at 876)] Permitting Relator to use discovery material to rescue its defective pleading would certainly undermine Rule 9(b), which requires relators to plead claims with particularity.

Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). A complaint satisfies the rule if it meets the following particularity requirements:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id*. Allowing a relator to circumvent these requirements by filing a defective FCA claim and then filling in the details based on document obtained during compulsory discovery, as Relator did, would render Rule 9(b) a nullity in FCA cases.

21

Against this backdrop, *Bingham* was correctly decided and the District Court's decision to prohibit Relator from using the discovery process to rescue an otherwise defective complaint under Rule 9(b) did not constitute a clear error of judgment. *See In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) ("[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."). *Bingham*, although unpublished, is still a well-reasoned decision of this Court with facts closely mirroring the facts in this case. *See Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (recognizing that although unpublished opinions are not controlling authority, they can be persuasive where their legal analysis warrants it and where the facts are materially similar).

In *Bingham*, as here, the relator filed a materially-deficient initial pleading. 783 F. App'x at 875. As here, the relator received leave to amend and premised its second amended pleading on information obtained through discovery. *Id*. at 877. As here, the relator failed to "point to specific facts in the SAC that he learned prior to discovery. Instead, he points us back to his FAC, arguing that his FAC pleaded all of the 'essential elements' of the [claim]." *Id*. And here Relator failed to identify any facts that it learned prior to discovery through non-public sources, a fact Relator reenforced time and again during oral argument below. [Doc. 252 at 79:17-81:8] Dismissal was required because allowing Relator to use discovery material to rescue

a defective pleading would "circumvent the purpose of Rule 9(b)," *Bingham*, 783 F. App'x at 876, and absent the allegations improperly based on discovery materials, the SAC could not sufficiently state a FCA claim.

On appeal, Relator cites to a series of cases to argue that the District Court improperly relied on *Bingham*. But Relator's cases are inapposite. For instance, in *Bullock v. United States*, 655 F. App'x 739, 742 (11th Cir. 2016) [IB at 18], *itself an unpublished decision*, the Court disagreed with the district court's decision to rely on *another* unpublished decision because that decision was factually distinguishable on multiple grounds from the facts in *Bullock*. Here, as discussed, the facts in *Bingham* and the facts in this case track one another closely.

Relator cites *Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) [IB at 19-20]. *Grimm* involved the question of whether a parking ticket conveyed sufficient "notice" that a car might be towed. *Id*. at 1062. The Ninth Circuit concluded that the district court should have relied upon a binding United States Supreme Court case that set forth the correct legal standard, not an unpublished memorandum decision of the Court of Appeals that used an incorrect legal standard. *Id.* at 1066-67. Unlike *Grimm*, in this case, the TSPs are aware of no other binding authority (Supreme Court or Eleventh Circuit) that contradicts *Bingham*. Relator cites none.

*McNamara v. Government Employees Ins. Co.*, 30 F.4th 1055, 1060-61 (11th Cir. 2022) [IB at 16, 20], is similarly distinguishable. There, this Court found that

the district court erred in relying on an unpublished Eleventh Circuit decision, which incorrectly analyzed Florida bad-faith insurance law instead of relying upon the correct Florida law. *McNamara* is simply not relevant. Nor is *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD, 2013 WL 2303768 (N.D. Ga. 2013). *Omnicare* is a district court case decided six years prior to *Bingham*. In that district court case, the court explicitly explained that it "does *not* adopt a general rule that information learned in discovery in an action may be used to later seek to avoid dismissal for failure to meet the particularity requirements of Rule 9(b)." *Id.* at *4 n.9 (emphasis added).

This is a matter of the court's discretion. Here, the District Court exercised its discretion to find that the use of information obtained during discovery, "even if it substantiates Relator's initial claims," would "render the Rule 9(b) heightened pleading standard a nullity." [Doc. 265 at 13] "If the Court were to allow Relator to use information it obtained in discovery, it would effectively be permitting relators to make baseless allegations, conduct discovery in hopes of discovering information that will substantiate their allegations, and amend pleadings to state a viable claim if they discovery corroborating evidence." [*Id.*] Relator simply has not met its burden of showing on appeal that this ruling was an abuse of the District Court's discretion.

Moreover, Relator has not shown that the District Court erred in dismissing the SAC with prejudice as the SAC cannot survive without the stricken allegations.

24

In fact, Relator failed to even argue in its Principal Brief against the propriety of dismissal without the allegations. Therefore, this argument not only fails on the merits, it is waived for the Court's review. *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) (appellants abandoned argument of district court error where they failed to challenge the ruling in their opening brief); *Holland v. Gee*, 677 F.3d 1047, 1066-67 (11th Cir. 2012) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

### C.    *Commencement of Discovery Does Not Vitiate Rule 9(b) Considerations.*

Relator argues that this case cannot be the sort of "fishing expedition" Rule 9(b) is intended to prevent because, while the District Court was considering the Rule 9(b)-based motion to dismiss, Relator conducted discovery—*i.e.*, "the catch was already on the hook." [IB at 27-28] In other words, Rule 9(b) does not apply to Relator because Relator, at the outset of the case, convinced the District Court to permit it to move forward with discovery. It defies logic to allow Relator to undermine Rule 9(b) simply because, as a matter of judicial efficiency, the District Court allowed discovery to continue in this case. Relator cites no authority to merit that conclusion.

Established precedent clearly contradicts Relator's position. Rule 9(b) requires pleading with particularity *before* discovery commences—especially in FCA cases. *See Atkins*, 470 F.3d at 1359 ("[t]he particularity requirement of Rule

9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim."); *Clausen*, 290 F.3d at 1313 n.24 (a deficient pleading enables a relator to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' good will and reputation on what may be baseless allegations used to extract settlements."); *see also Karvelas*, 360 F.3d at 231 ("[A] *qui tam* relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."). Accepting Relator's position would render this case law meaningless. Just because discovery continues does not mean information uncovered in that discovery can be used to circumvent Rule 9(b).

Moreover, Relator's citation to *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1310 (Fed. Cir. 2011) [IB at 27] is particularly curious because that case supports dismissal based on Rule 9(b). That case involved a writ of mandamus to the Federal Circuit of a decision *denying* a motion to dismiss. The Federal Circuit first found that Rule 9(b) applies to false marketing claims under 35 U.S.C. § 292, which has a *qui tam* provision that in many ways parallels that of the FCA. *Id.* at 1309. The district court denied a motion to dismiss on the incorrect premise that general allegations about knowledge would suffice. *Id.* at 1311 ("…the district court expressly relied on the relator's general allegation that BP new or should have known that the patent expired.").

26

On appeal, the Federal Circuit found that the district court's error was sufficiently egregious to grant a writ of mandamus despite the interlocutory nature of that challenge. In so ruling, the Federal Circuit made clear that Rule 9(b), as applicable here, is precisely meant to prevent relators from using discovery as a fishing expedition. *Id.* at 1310. The Federal Circuit, perhaps gilding the lily, left no doubt about the question, "…every regional circuit has held that a relator must meet the requirements of Rule 9(b) when bringing complaints on behalf of the government." *Id.*

Neither *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 493 (11th Cir. 2009), nor *Haynes v. JPMorgan Chase Bank, N.A.*, 466 F. App'x 763, 765 (11th Cir. 2012), [IB at 29], cases cited by Relator, save its argument. Those cases do not address a waiver of the Rule 9(b) particularity requirement where discovery had already commenced. And both determined that the allegations in those cases did not satisfy the Rule 9(b) particularity requirement. *Curtis Inv.*, 341 F. App'x at 497; *Haynes*, 466 F. App'x at 765.

### D.    *The District Court Did Not Fail to Address Purportedly Contrary Cases.*

Nor did the District Court "fail[] to address" the several federal *district court* cases that Relator claims are contrary to *Bingham*. [IB at 29-33] The District Court correctly noted and disregarded Relator's authority as "non-Eleventh Circuit cases"

[Doc. 265 at 12].[7] As district court cases, none of the cases Relator cites are more persuasive or binding than *Bingham*. Most were decided on dissimilar facts unique to the allegations at issue and do not compel the conclusion Relator promotes.[8] For example, the Central District of California's decision in *Battle v. CLI Atlas Deerwood LLC*, No. EDCV 20-2358 JGB (SPx), 2021 WL 3616108, at *2 (C.D. Cal. 2021), has no import here because it is neither a Rule 9(b) case nor a FCA case.

*Marshall Medical Center* does not help Relator's argument because it addresses amendment after discovery only in hypothetical terms. 2015 WL 2235461, at *3 ("If discovery reveals grounds for holding the Foundation liable in this case, Relator may move to amend her complaint at the appropriate time."). *U.S. ex rel. Galmines v. Novartis Pharmaceuticals Corp.*, 88 F. Supp. 3d 447, 451 (E.D. Pa. 2015), concerned discovery-based amendments as to facts that were "not critical elements of a False Claims Act claim." (citation and internal quotation marks omitted).

In contrast, as the District Court found, the discovery-based amendments in this case derived from "Waiver Requests that form the factual predicate for Relator's presentment and make-or-use claims"—in other words, "critical elements" of

---

[7] The District Court did not mention *United States v. Marshall Medical Center*, No. 2:12-cv-00098-JAM-KJN, 2015 WL 2235461, at *3 (E.D. Cal. May 12, 2015).

[8] One of the cases, *Omnicare*, is distinguished above at p. 24.

Relator's FCA claims. [Doc. 265 at 9, 14 ("Without the Waiver Request Allegations, Relator fails to sufficiently state a claim for the presentment claim or the make-or-use claim, and dismissal of the SAC is warranted.")]

### E.    *The Court Properly Struck the Impermissible Information Obtained In Discovery Under Its Inherent Power.*

Relator argues that the District Court erred in striking allegations derived from discovery materials "even when they plainly do not fall within the scope of Rule 12(f)." [IB at 25 (citing Doc. 265 at 12); IB at 23-26 (citing Fed. R. Civ. P. 12(f))] But the District Court had the inherent power to do so even outside the confines of Rule 12(f). *See, e.g.*, *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) (court has inherent power to strike a pleading to ensure its orders and ensure prompt disposition of legal actions) (citation omitted); *see also Whipple v. Johnson*, No. 20-10421-J, 2020 WL 8615598, at *1 (11th Cir. 2020) (courts can strike pleadings to manage dockets) (citing *Hartline*); *U.S. v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 571 (M.D. Tenn. 2021) (inherent power to strike exists independent of Rule 12(f)); *Knous v. U.S.*, 981 F. Supp. 2d 1365, 1367 (N.D. Ga. 2013) (granting a Rule 12(f) motion to strike an NTSB report described to be "impermissible" under federal law).

Relator's narrow interpretation of the District Court's ability to strike impermissible material fails. Here, the District Court exercised its inherent power to strike the allegations as impermissible because those allegations based on materials

obtained during discovery allowed Relator to circumvent the particularity requirement of Rule 9(b). [Doc. 265 at 12] As explained above, that requirement protects defendants from parasitic and opportunistic relators who do not bring forth original, detailed allegations of fraud against the government. *Cooper*, 19 F.3d at 565 (citation omitted). And any prejudice here to the government is mitigated by the fact that the government has a continuing right to pursue any purported FCA claims against defendants notwithstanding the striking of Relator's allegations and dismissal of Relator's claims. [Doc. 265 at 17 ("The Court agrees that the dismissal should be without prejudice as to the government.")]

### F. *The Material Obtained from Third-Party Maersk is Equally Impermissible.*

The principles that underscore *Bingham*, Rule 9(b), and a court's inherent power to strike impermissible material, apply with equal force to material Relator obtained from Maersk during the discovery period. Maersk was under compulsion to produce the documents pursuant to a subpoena. [Doc. 265 at 11 (". . . Maersk was compelled to produce the discovery materials.")]

On appeal, Relator attempts to muddy the waters by disputing that it received Maersk's documents (which Maersk received from a FOIA request response) in "discovery." [IB at 35 (citing Doc. 265 at 14 (citing Doc. 252 at 45-46)); Doc. 251 at 10] Without denying that it received documents from Maersk *during discovery* or that it had issued a subpoena to Maersk [Doc. 226-6 (subpoena)], Relator

suggested that Maersk's largesse rather than the discovery process led to Maersk's production. [Doc. 255 at 5 (quoting Doc. 238 at 6) (emphasis added)] This is a contrived distinction that makes no difference.

It is undisputed that Relator obtained the documents during the discovery period from Maersk. [Doc. 226-6 (subpoena)] It is also undisputed that the subpoena created a compulsion for Maersk to produce the documents to Relator. [Doc. 226-6 (subpoena)] It is immaterial whether Relator had to obtain a court order for production or even whether Maersk explicitly stated that its production was completed pursuant to the subpoena. Maersk was legally compelled to produce the documents as part of the discovery process in this case.[9]

Relator misses the mark in attempt to create a distinction between direct party discovery (*i.e.*, Able, Cartwright, and J.K. Moving) and information learned about the other TSPs from Maersk after Relator served Maersk with a subpoena. [IB at 37-38] As noted by the District Court, *Bingham* applies to documents obtained in discovery irrespective of whether they are obtained in response to a subpoena. [Doc. 265 at 14] *Bingham* is meant to prevent the filing of a frivolous complaint and post-hoc attempts to gain the necessary information to substantiate that complaint through

---

[9] *See also* [Doc. 255-3 (Exhibit 2 to Relator's objections to the Second R&R, which is a 2021 email chain initiated by a Maersk General Manager, which further proves Relator's relationship with Maersk)].

discovery. *Id.* "*Bingham* makes no distinction between the manner in which the information was obtained during discovery." *Id.*

Relator cites *SouthEast Eye Specialists* [IB at 25 n.10, 37], which is inapposite. That case permitted a relator to use information gleaned from the government to overcome dismissal, thereby differentiating between discovery (this case) and the sharing of interest between a relator and the government (in whose shoes a relator stands). *SouthEast Eye Specialists*, 570 F. Supp. 3d at 573. Able, Cartwright, J.K. Moving, and Maersk all are not the government. Maersk's third-party information was obtained from a non-government entity (Maersk) as part of a compelled discovery response in the litigation.[10]

### G.    *Public Policy Does Not Warrant Reversal.*

Articulating no legal basis for the Court to overturn the District Court's decision, Relator contends that public policy should motivate the Court to do so. [IB at 33-35] Relator argues that the "American taxpayer" suffers harm from the District Court decision because it is based upon "a procedurally improper and unjustifiable technicality" and "would essentially grant immunity to [the TSPs] for providing evidence of their fraud." [IB at 33-35] Relator is wrong.

---

[10] The same distinction based on information obtained from the government was at issue in *United States ex rel. Underwood v. Genentech*, 720 F. Supp. 2d 671, 680 (E.D. Pa. 2010). In any event, *Underwood* is distinguishable because amendment was not necessary for the pleading to comply with Rule 9(b). *See id.* Consequently, that case did not present the same gatekeeping considerations as this matter.

First, the absence of any allegation of financial harm to the government here—indeed, Relator concedes that the government paid less [*see, e.g.*, Doc 222 ¶ 63 (charged 25% less)]—eviscerates Relator's argument. Economic harm is the *sine qua non* of a FCA violation. *Atkins*, 470 F.3d at 1357 (a false claim for payment is the *sine qua non* of a FCA claim); *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 184 (3d Cir. 2001) (submission of false claims that do not or would not cause financial loss to the government are not within the purview of the FCA). Relator's failure to allege this *sine que non* is by itself fatal to its claims.

Second, the government (and through it, American taxpayer) is by no means left without recourse. As the District Court aptly recognized, "the dismissal of Relator's claims would be with respect to Relator only, not to the Government's rights to bring the same FCA claims. As such, the Government can seek justice for the American taxpayer if it chooses to do so." [Doc. 265 at 13] Given the government's continuing right to pursue the FCA claims, striking Relator's improper allegations did not provide, as Relator argues, any level of immunity to the TSPs. [*Id*.]

The only harm that would flow from affirming the District Court's decision would be to the Relator itself, which would lose its opportunity to benefit from the punitive statutory damages provision embedded in the FCA. There is no public

policy in favor of a recovery for the Relator. Nor should the Court conflate a dismissal against Relator with harm to the taxpayer or the government.

## II. MULTIPLE OTHER GROUNDS WARRANT AFFIRMANCE OF THE DISTRICT COURT'S DISMISSAL WITH PREJUDICE OF THE SAC AS A MATTER OF LAW.

This court may review the record to affirm dismissal on any basis supported by the record. *Gundy v. City of Jacksonville*, 50 F.4th 60, 70 (11th Cir. 2022) (quoting *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012)). Multiple alternative grounds in the record support affirmance of the dismissal with prejudice of the SAC as a matter of law.

### A. *The SAC Failed Because It Did Not Allege That the TSPs Knowingly Submitted Materially False Claims or Statements.*

To satisfy Rule 9(b), Relator must plead particular facts about the claim for payment, including "the 'who,' 'what,' 'where,' 'when,' and 'how'" of the fraudulent request, *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005), by providing "specific [] information—such as dates, times, and amounts of actual false claims or copies of bills." *U.S. v. HPC Healthcare, Inc.*, 723 F. App'x 783, 789 (11th Cir. 2018) (citing *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009)). It is not enough to allege a scheme—instead, to sufficiently plead a presentment claim, Relator must allege the "actual submission of a false claim," and must do so with "some indicia of reliability." *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1275–76 (11th Cir. 2018). Relator's failure to meet these

pleading requirements is another basis for dismissal with prejudice under this Court's *de novo* review. *See Paez v. Mulvey*, 915 F.3d 1276, 1292 (11th Cir. 2019) (district court's ruling on motion to dismiss is reviewed *de novo*).

The FCA narrowly defines a claim as "any request or demand, whether under a contract or otherwise, for *money or property* . . . that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient." 31 U.S.C. § 3729(b)(2)(A) (emphasis added). Beyond the fact that Relator's expansive interpretation of the Act's "availability" requirement is not supported by either the text of the FCA or by DOS's authoritative guidance, Relator's allegations failed to establish that the TSPs made any false statements or false claims for payment.

In dismissing the FAC, the District Court found that the FAC did "not adequately plead a presentment claim" because it "fail[ed] to allege, for each [TSP], the submission of a false statement, scienter, materiality, and *the payment of any money by the United States*." [Doc. 218 at 15 n.6 (emphasis added)] The SAC made the same defective, conclusory assertion that the TSPs "knowingly caused to be presented false claims for payment or approval to an officer or employee of the United States." [Doc. 222 ¶ 215] This bare assertion did not satisfy the pleading requirements of Federal Rule of Civil Procedure 8, let alone the particularity requirements of Rule 9(b).

While Relator repeated in the SAC its allegations that the TSPs, independently, embarked on a purported scheme to submit "low-ball bids" reflecting the lower costs associated with foreign-flagged vessels [Doc. 222 ¶¶ 6, 61], it once again failed to establish a nexus between the underbid and a request for payment that the contractor would not have been entitled to absent the contract." *U.S. ex rel. Laird v. Lockheed Martin Engineering & Science Servs. Co.*, 491 F.3d 254, 260 (5th Cir. 2007). Even under the false certification theory Relator advanced, the "misrepresentation about compliance with a statutory [or] regulatory . . . requirement must be material to the Government's payment decision in order to be actionable under the [FCA]." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 181 (2016).

The statements at issue here—the alleged low ball bids and allegedly false waiver requests—are not claims for payment or even remotely connected to a claim for payment or the billing process. A false statement to the government, standing alone, does not violate the FCA. *Corsello*, 428 F.3d at 1014 (holding that the relator sufficiently alleged with particularity the improper practices but failed to allege the "who," "what," "where," "when," and "how" of fraudulent requests for payment to the government). As noted by the Supreme Court in *Escobar*, the FCA is "not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." 579 U.S. at 194 (citations omitted). The FCA does

36

not create liability for a company's purported bad acts "unless, as a result of such acts, the provider knowingly asks the Government to pay *amounts it does not owe*." *Clausen*, 290 F.3d at 1311 (emphasis added).

In short, the submission of a fraudulent request for payment is the "sine qua non of a FCA violation." *Id*. at 1311; *see also U.S. ex rel. Aquino v. Univ. of Miami*, 250 F. Supp. 3d 1319, 1327–30 (S.D. Fla. 2017) ("Whether submission of the claims or payment by the government are sufficiently established are different questions than whether the scheme has been sufficiently pled."). Relator failed to allege that any of the TSPs asked the government to pay an amount for a shipment it did not owe. Moreover, Relator could not "describe a private scheme in detail but then . . . allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311; *see also Carrel*, 898 F.3d at 1275 (fraudulent submission cannot be inferred from the circumstances); *Corsello*, 428 F.3d at 1013; *Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Georgia, LLC*, 853 F. App'x 496, 501 (11th Cir. 2021).

**B.      *The SAC Failed to Allege Scienter or Falsity.***

The Magistrate Judge correctly found that the SAC failed to establish scienter in connection with the "make or use claim," and this Court can affirm the District Court's dismissal on this basis as well. [Doc. 251 at 14]

37

First, Relator did not allege facts sufficient to show that the TSPs had knowledge of (or acted with reckless disregard for or deliberate indifference of) U.S.-flagged vessels available to take the cargo from the departure port to the destination port. To allege scienter, Relator was required to assert facts sufficient to support a plausible inference that each defendant knew that claims submitted, or statements made in support of claims, were false. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has tasked the courts with "'strict enforcement' of the FCA's 'rigorous' scienter requirement." *Escobar*, 579 U.S. at 192. A defendant acts knowingly only if the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). "[A] person acts with reckless disregard when the actor knows or has reason to know of facts that would lead a reasonable person to realize that harm is the likely result of the relevant act." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1059 (11th Cir. 2015) (quoting *U.S. v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013)). FCA "liability does not attach to innocent mistakes or simple negligence." *Urquilla-Diaz*, 780 F.3d at 1059 (citation omitted). Bald assertions do not suffice.

Here, in the SAC, Relator cited three examples of waiver forms that it contended were false during the relevant time period of 2008-2018. [Doc. 222 ¶¶ 86,

106, 143] Each of these forms showed the departure port. *See, e.g.*, [Doc. 222 ¶ 86 (departure port of New York)]. Each showed the arrival port. *See, e.g.*, [*Id.* (arrival port of Karachi)]. And each stated the absence of a U.S.-flagged vessel with capacity for the cargo at the departure port. [Doc. 222 ¶¶ 86, 106, 143] Relator did not allege facts that show how those statements are untrue or, even if untrue, the byproduct of something more inimical than mistakes or mere negligence. *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017); *see also* [Doc. 251 at 15].[11]

Second, Relator's allegations were (with two lone exceptions) predicated on the legal argument that the TSPs had a duty to transship cargo from one departure port to another in search of a U.S.-flagged vessel. *See, e.g.*, [Doc. 222 at ¶ 106 (Cartwright should have trucked cargo from New York to Norfolk)]. Federal guidance is inconsistent. The GSA's HTOS guidance explicitly precludes transshipment or inefficient routing. [Doc. 226-13 at 3-3, 3-6]; *see also* [Doc. 226-1 at 16-17 (overview of DOS and Comptroller General guidance); Doc. 241-1 (additional 1931 Comptroller General opinion regarding transshipment of household

---

[11] The SAC contained only *two* examples in which an alternative U.S.-flagged vessel left from and arrived to the same ports as listed in respective waiver requests. [Doc. 251 at 13] Even for these two vessels, Relator did not allege that the U.S.-flagged vessels had capacity to take the cargo in question for a reasonable price. Moreover, there were no allegations in the SAC to suggest that the failure to identify these two vessels (assuming that they had capacity at a reasonable price) was more than mere negligence or a mistake.

goods)]. Relator cites on appeal sections of the FAM to suggest transshipment may have been necessary if U.S.-flagged vessels were available elsewhere. [IB at 4, 10] The government codified those sections of the FAM in 2022, after the alleged conduct ended. 14 FAM §§ 616.1, 616.2. Regardless, Relator's allegations required a party to interpret its "duties" under inconsistent federal administrative law and, therefore, implicated the legal falsehood doctrine set forth in *Safeco Ins. Co of Am. v. Burr*, 551 U.S. 41, 69 (2007).

In *Safeco*, 551 U.S. at 69-70, the Supreme Court fashioned a two-part test for assessing scienter based on an alleged legal falsehood under the Fair Credit Reporting Act. At least six federal circuits have applied the *Safeco* test to claims of legal falsehood arising under the FCA and this standard in the FCA context is currently under review by the Supreme Court. *See U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 344 (4th Cir. 2022) (aggregating cases) (citations omitted).[12] The *Safeco* test asks (1) whether defendant's interpretation was objectively reasonable; and even so, if (2) authoritative guidance might have warned defendant away from that reading. *Safeco*, 551 U.S. at 69–70. When a FCA claim rests on the interpretation of a law or regulation to prove falsity, the relator "must

---

[12] The Fourth Circuit vacated *Sheldon* on rehearing en banc. *See U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (4th Cir. 2022). A petition for *certiorari* in *Sheldon* was docketed in the United States Supreme Court on December 27, 2022 (Case No. 22-593).

show that there is *no reasonable interpretation of the law* that would make the allegedly false statement true." *U.S. ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1191 (8th Cir. 2010) (emphasis added); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 377 (4th Cir. 2008).

Here, the Second R&R concluded that "[g]iven these standards, Relator's bald allegation that Defendants recklessly disregarded the potential availability of U.S. flag vessels does not satisfy the FCA's rigorous scienter requirement." [Doc. 251 at 15 (citing *Escobar* 579 U.S. at 192 (2016))][13] Decades of granted government waiver decisions undermine Relator's contention that the TSPs should have credited the Relator's cited regulation over the GSA's HTOS guidance. *See, e.g.*, *To the Secretary of State*, B-124927, 1956 WL 3381 (Comp. Gen. Jul. 19, 1956). In any event, as discussed, above, Relator has not alleged facts sufficient to show that U.S.-flagged vessels at alternative ports had capacity to ship the cargo at issue.

Third, the SAC was devoid of any allegation suggesting that the TSPs did not search for routes that involved U.S.-flagged vessels. Relator is not an insider with any TSP. [Doc. 218 at 13 (citing *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x. 693, 708 (11th Cir. 2014))] Nor has Relator proffered in the SAC any

---

[13] Relator's refusal to identify itself beyond claiming to be an "insider in the TSP business" also violates Fed. R. Civ. Proc. 10(a). *See A1 Procurement, LLC v. Hendry Corp.*, No. 11-23582-CIV-ALTONAGA/Simonton, 2012 WL 12844745, at *4 (S.D. Fla. 2012) ("Neither the public nor Defendants should be left to guess who exactly Relators are in this qui tam action.") (citation omitted).

insider information. Relator simply has not alleged the factual foundation in the SAC for Relator to have the information necessary to establish scienter.

## <u>CONCLUSION</u>

For the foregoing reasons, the TSPs respectfully request that this Court affirm the District Court's decision to strike the allegations in the SAC and dismiss Relator's case with prejudice.

Respectfully submitted,

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS (25766)
kristen.fiore@akerman.com
Akerman LLP
201 E. Park Avenue, Suite 300
Tallahassee, FL 32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103

NOAM FISCHMAN (DC 97580)
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Telephone:  (202) 393-6222
Facsimile:  (202) 393-5959
noam.fischman@akerman.com

**ATTORNEYS FOR APPELLEE**
**CARTWRIGHT INTERNATIONAL VAN LINES, INC.**

/s/ James H. Wyman
JAMES H. WYMAN (FL 117692)
**HINSHAW & CULBERTSON LLP**
2525 Ponce de Leon Blvd., Suite 400
Coral Gables, FL 33134
Telephone:  (305) 358-7747
Facsimile:  (305) 577-1063
jwyman@hinshawlaw.com

**ATTORNEYS FOR APPELLEE NEW WORLD INTERNATIONAL, LTD.**

NICHOLAS E. PANTELOPOULOS
(FL 103751)
**KMA ZUCKERT LLC**
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134
Telephone:  (305) 506-2052
Facsimile:  (305) 675-7606
nep@kmazuckert.com

/s/ Jolyon Andrew Silversmith
JOLYON ANDREW SILVERSMITH
(DC 463897)
**KMA ZUCKERT LLC**
888 17th Street, N.W., Suite 700
Washington, DC 20006
Telephone:  (202) 973-7918
Facsimile:  (202) 342-0683
jsilversmith@kmazuckert.com

**ATTORNEYS FOR APPELLEE ARPIN INTERNATIONAL GROUP, INC.**

/s/ Stuart A. Berman
STUART A. BERMAN (MD 9201020005)
**LERCH, EARLY & BREWER, Chtd.**
7600 Wisconsin Avenue, Suite 700
Bethesda, Maryland 20814
Telephone:  (301) 657-0729
Facsimile:  (301) 347-1538
saberman@lerchearly.com

ROBERT HARRIS (FL 0817783)
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, FL 33131
Telephone:  (305) 371-0001
Facsimile:  (305) 371-0002
rharris@stackfernandez.com

**ATTORNEYS FOR APPELLEE PAXTON VAN LINES, INC.**

/s/ Scott A. Cole
SCOTT A. COLE (FL 885630)
**COLE, SCOTT & KISSANE, P.A.**
9150 S. Dadeland Blvd., Suite 1400
Miami, FL 33156
Telephone:  (305) 350-5346
Facsimile:  (305) 373-2294
Scott.cole@csklegal.com

**ATTORNEYS FOR APPELLEE HILLDRUP COMPANIES, INC.**

/s/ Thomas F. Murphy

| | |
|---|---|
| BRYAN KNIGHT (GA 142401) | THOMAS F. MURPHY (DC 464475) |
| **KNIGHT PALMER LLC** | **FRIEDLANDER MISLER, PLLC** |
| 1360 Peachtree St. NE, Suite 1201 | 5335 Wisconsin Avenue, NW, Suite 600 |
| Atlanta, GA 30309 | Washington, DC 20015 |
| Telephone: (404) 228-4822 | Telephone: (202) 872-0800 |
| Facsimile: (404) 228-4821 | Facsimile: (202) 857-8343 |
| bknight@knightpalmerlaw.com | tmurphy@FMlaw.com |

**ATTORNEYS FOR APPELLEE WESTERN EXPRESS FORWARDING, LLC**

/s/ Irene Oria

| | |
|---|---|
| IRENE ORIA (FL 484570) | ROBERT T. WRIGHT, JR. (FL 185525) |
| Irene.oria@fisherbroyles.com | Robert.wright@fisherbroyles.com |
| **FISHER BROYLES, LLP** | **FISHER BROYLES, LLP** |
| 1221 Brickell Ave., Suite 900 | 1221 Brickell Ave., Suite 900 |
| Miami, FL 33131 | Miami, FL 33131 |
| Telephone: (786) 873-4603 | Telephone: (786) 873-4603 |
| Facsimile: (786) 536-2838 | Facsimile: (786) 536-2838 |

**ATTORNEYS FOR APPELLEE ABLE MOVING & STORAGE, INC.**

/s/ Michael I. Kessler

MICHAEL I. KESSLER (FL 117784)
**O'HAGAN MEYER**
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
Telephone: (213) 306-1610
Facsimile: (213) 306-1615
mkessler@ohaganmeyer.com

**ATTORNEYS FOR APPELLEE J.K. MOVING & STORAGE INC.**

|  | /s/ Michael B. Silverstein |
|---|---|
| MATTHEW LANGLEY (IL 6337129) | MICHAEL B. SILVERSTEIN (OH 0098036) |
| **BENESCH, FRIEDLANDER,** | **BENESCH, FRIEDLANDER, COPLAN &** |
| **COPLAN & ARANOFF, LLP** | **ARANOFF, LLP** |
| 71 S Wacker Drive, Suite 1600 | 41 S High St., Suite 2600 |
| Chicago, IL 60606 | Columbus, OH 43054 |
| Telephone: (312) 624-6408 | Telephone: (614) 223-9362 |
| mlangley@beneschlaw.com | msilverstein@beneschlaw.com |

**ATTORNEYS FOR APPELLEE DeWITT COMPANIES LIMITED LLC**

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 10,215 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 1, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send a copy to all counsel of record in this case registered on the CM/ECF system.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS

46