[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13340

_____

UNITED STATES OF AMERICA,
ex rel,

SEDONA PARTNERS LLC,

                                        Plaintiff-Appellant,

*versus*

ABLE MOVING & STORAGE INC.,
CARTWRIGHT INTERNATIONAL VAN LINES INC,
DEWITT COMPANIES LIMITED LLC,
HILLDRUP COMPANIES INC.,
J.K. MOVING & STORAGE INC., et al.,

                                        Defendants-Appellees,

2                    Opinion of the Court                    22-13340

ARPIN VAN LINES INC., et al.,

                                                        Defendants.

——————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23242-BB

——————————————

Before JILL PRYOR, NEWSOM, and LAGOA, Circuit Judges.

JILL PRYOR, Circuit Judge:

This case is about whether, at the motion-to-dismiss stage, a court may ignore a *qui tam* relator's allegations in an amended complaint solely because the relator derived those allegations from material obtained in discovery. Here, the district court disregarded the relator's allegations based on an unpublished case from this Court holding that at the motion to dismiss stage, consideration of a relator's discovery-based allegations "may not be appropriate in cases to which the heighte[ne]d pleading standard of [Federal] Rule [of Civil Procedure] 9(b) applies if the amendment would allow the plaintiff to circumvent the purpose of Rule 9(b)." *Bingham v. HCA, Inc.*, 783 F. App'x 868, 876 (11th Cir. 2019) (unpublished).

Persuaded by *Bingham*, the district court disregarded allegations in relator Sedona Partners LLC's second amended complaint

that were based on information Sedona had learned in discovery. After striking those allegations under Federal Rule of Civil Procedure 12(f), the court concluded that Sedona had not satisfied the heightened pleading standard under Rule 9(b) and dismissed the second amended complaint with prejudice. Sedona appeals the district court's striking of the discovery-based allegations and dismissal of its False Claims Act ("FCA") claims, which alleged that the defendants engaged in a years-long scheme to defraud a United States government shipping program.

After careful consideration, and with the benefit of oral argument, we conclude that Rule 9(b)'s text and the Supreme Court's admonitions about supplementing the pleading requirements of the federal rules do not permit courts to disregard, at the motion to dismiss stage, relators' allegations solely because they reflected information obtained in discovery. We reverse the district court's order striking Sedona's allegations derived from discovery materials, vacate the district court's order dismissing the complaint, and remand for further proceedings consistent with this opinion.

## I.     BACKGROUND

### A.     Factual Background

The Centralized Household Goods Traffic Management Program ("CHAMP"), administered by the General Services Administration ("GSA"), is the federal program that assists federal employees with shipping their belongings when they are transferred

to new overseas postings.[1] Transportation service providers ("TSPs") compete for shipping contracts under CHAMP.

Each year, GSA solicits bids for international shipping routes or "lanes." TSPs submit shipping lane transportation rate proposals to GSA. GSA then awards TSPs contracts for particular lanes. Shipping lane contracts awarded under CHAMP are subject to federal regulations, including the "America-First" policy, which requires TSPs to use United States flag vessels—American shipping carriers—for contract shipments. Doc. 222 at 4.[2] After being awarded a shipping lane contract, a TSP can apply for a foreign flag vessel waiver, which excepts it from the United States flag vessel requirement.

To request a waiver, the TSP "must certify in writing that [United States] flag shipping is not available or that the use of the foreign flag shipping is necessary to meet delivery requirements." *Id.* at 13. The TSP also must submit "documentation of [any] differences in rates between the foreign vessel rate and the rate originally awarded" for the applicable lane. *Id.* Foreign flag vessels are

---

[1] In deciding whether the district court erred in granting the defendants' motion to dismiss, we accept as true the well-pleaded allegations in the complaint. *See Foudy v. Indian River Sheriff's Off.*, 845 F.3d 1117, 1122 (11th Cir. 2017) (explaining that when reviewing a district court's dismissal order, we "must accept the factual allegations of the complaint as true and may affirm the dismissal of the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (internal quotation marks omitted)).

[2] "Doc." refers to the district court's docket entries.

typically much cheaper than United States flag vessels for completing contracted shipments. As a result, when a TSP receives a waiver, it incurs lower costs in providing services than if it had used a United States flag vessel, yet the amount the United States government pays the TSP does not change.

The relator in this case—Sedona—is a TSP. Sedona alleged that the defendants, Able Moving & Storage, Inc.; Arpin International Group, Inc.; Cartwright International Van Lines, Inc.; Coleman American Moving Services, Inc.; DeWitt Companies Limited, LLC; Hilldrup Companies, Inc.; J.K. Moving & Storage, Inc.; New World International, Ltd.; Paramount Transportation Systems; Paxton Van Lines, Inc.; and Western Express Forwarding, LLC— all TSPs—carried out a fraudulent scheme between 2008 and 2018 in which, after winning bids based on the use of United States flag vessels, they routinely requested foreign flag waivers and used those vessels instead of United States flag vessels. The defendants carried out this fraudulent scheme by making "two false submissions to the government." *Id.* at 5.

For the first false submission, Sedona alleges that the defendants "submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping . . . lanes, across international waters." *Id.* (internal quotation marks omitted). After securing contracts to provide shipping services for these lanes, the defendants then submitted the second type of false submission: They requested foreign flag waivers by certifying that "no [United States] flag vessels were available to carry-out shipments" and "that a

foreign flag vessel was necessary to meet delivery requirements." *Id.* But, according to Sedona, the defendants "knew that [United States] flag vessels were available when they submitted the waiver requests." *Id.* Sedona alleges that through this fraudulent conduct the defendants secured highly competitive government contracts by underbidding other TSPs that submitted legitimate bids reflecting the cost of using United States flag carriers. And by using cheaper foreign flag vessels, they profited despite their low-ball bids.

Although the Department of State could audit waiver submissions to verify that United States flag ships were unavailable, the defendants knew that the Department lacked the resources to audit many waiver requests. Because waivers are routinely granted, this conduct resulted "in hundreds of millions of dollars going to foreign companies instead of American companies." *Id.* at 6.

**B.    Procedural Background**

Sedona, suing as a *qui tam* relator, filed a complaint alleging that the defendants had violated the FCA.[3] After Sedona amended its complaint the defendants moved to dismiss the action, arguing that the complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Some of the defendants pointed out that Sedona failed to allege that the "United States paid *any* [false] claims submitted by *any* of the defendants." Doc. 153 at 5.

The defendants then moved to stay discovery until the district court ruled on the motions to dismiss. They argued that the court should not require them to answer discovery until it determined whether the amended complaint satisfied Rule 9(b)'s heightened pleading requirements.

The district court denied the motion to stay discovery. After examining Sedona's allegations, the court ruled that the defendants' motions to dismiss were not "clearly meritorious." Doc. 204 at 5. The court explained that Sedona alleged its claims in detail. And the defendants failed to demonstrate that "discovery would be unduly burdensome." *Id.* at 4. After the district court denied the stay motion, several defendants produced documents to Sedona. In addition, Sedona subpoenaed Maersk Line, Limited, a third-party, which also produced documents.

---

[3] The United States declined to intervene in the action.

A few months later, the district court granted the defendants' motions to dismiss without prejudice.[4] The court concluded that the amended complaint was inadequate because it made "general allegations against [d]efendants as a group, *without pointing to any specific conduct on the part of any of them.*" Doc. 218 at 10 (internal quotation marks omitted). The court also determined that it failed to allege fraud with the particularity required under Rule 9(b). In its dismissal order, the court allowed Sedona to file a second amended complaint to correct these deficiencies.

Sedona's second amended complaint alleged two FCA causes of action. For the first, Sedona alleged that the defendants violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting false claims, records, and statements to the government, "including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents." Doc. 222 at 117. For the second, Sedona alleged that the defendants violated 31 U.S.C. § 3729(a)(1)(B) when they knowingly (1) "made, used, or caused to be made or used false records or statements material to false or fraudulent claims" and (2) "made, used, and/or caused to be made and used false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting

---

[4] The district court earlier denied as moot defendant Dewitt's motion to dismiss after Dewitt and Sedona filed a joint notice of proposed settlement. After the settlement fell apart, Dewitt asked the district court to reconsider its order denying as moot Dewitt's motion to dismiss. its order dismissing Sedona's first amended complaint, the district court denied as moot Dewitt's motion for reconsideration.

documents." *Id.* at 118. In support of these claims, Sedona identi-fied shipments in which the defendants allegedly had falsely certi-fied the need for a foreign flag waiver. In total, it identified at least 96 shipments for which the defendants allegedly submitted false certifications.

The defendants moved to dismiss the second amended com-plaint with prejudice under Federal Rule of Civil Proce-dure 12(b)(6) and to strike under Federal Rule of Civil Proce-dure 12(f) Sedona's allegations derived from materials it gained in discovery. The defendants acknowledged that the second amended complaint included more information about some shipments. But they argued that these new allegations should be struck because they were based on information Sedona learned in discovery. They asserted that "[t]he Eleventh Circuit has made clear that permitting a [r]elator to use the discovery process to cure a defective pleading constitutes an impermissible end-run around the gatekeeping func-tions of Rule 9(b)." Doc. 226-1 at 6. Without these allegations, the defendants argued, the second amended complaint did not satisfy Rule 9(b).

The magistrate judge recommended that the district court grant the defendants' motion because (1) Sedona's waiver-request allegations, which were necessary predicates for Sedona's FCA claims, were obtained from discovery and should be struck based on this Court's unpublished decision in *Bingham*; (2) Sedona failed to sufficiently allege its presentment claim—even considering the waiver-request allegations—because it failed to allege that the

defendants submitted any claims for payment; and (3) Sedona's make-or-use claim was likewise insufficient even with the waiver-request allegations because Sedona failed to allege the necessary falsity and scienter elements of the claim. Sedona filed its objections to the magistrate judge's recommendation and moved for leave to file a third amended complaint.

The district court adopted the magistrate judge's recommendation. It explained that *Bingham* clarified that courts may strike "allegations based on materials obtained during discovery . . . if it prevents relators from circumventing the particularity requirement of Rule 9(b)." Doc. 265 at 12. After finding that Sedona's allegations about the "Waiver Requests that form the factual predicate for [Sedona's] presentment and make-or-use claims" were derived from discovery materials, the court reasoned that if it "were to allow [Sedona] to use information it obtained in discovery, it would effectively be permitting relators to make baseless allegations, conduct discovery in hopes of discovering information that will substantiate their allegations, and amend pleadings to state a viable claim if they discover corroborating evidence." *Id.* at 9, 13. The district court "decline[d] to render the Rule 9(b) heightened pleading standard a nullity in such a manner by permitting the use of information obtained during the course of discovery, even if it substantiates [Sedona's] initial claims" and struck the waiver-request allegations from the second amended complaint. *Id.* at 13. After striking Sedona's allegations identifying 96 shipments involving false waiver requests, the district court concluded that Sedona had not stated a claim for the presentment claim or the

make-or-use-claim and dismissed the second amended complaint with prejudice. It also denied Sedona's motion to file a third amended complaint, explaining that—in the absence of the waiver-request allegations that were based on information obtained from discovery—giving Sedona another opportunity to amend would not cure the second amended complaint's deficiencies and thus would be futile.

This is Sedona's appeal.

## II.    STANDARD OF REVIEW

Our review of a district court's interpretation of the Federal Rules of Civil Procedure is *de novo*, as is our review of a district court's order granting a motion to dismiss for failure to state a claim upon which relief can be granted. *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 872, 875 (11th Cir. 2022); *Mesocap Ind. Ltd. v. Torm Lines*, 194 F.3d 1342, 1343 (11th Cir. 1999).

We review a district court's order granting a motion to strike under Federal Rule of Civil Procedure 12(f) for abuse of discretion. *State Exch. Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Savoia-McHugh v. Glass*, 95 F.4th 1337, 1342 (11th Cir. 2024) (internal quotation marks omitted).

## III.    DISCUSSION

We proceed in two parts. First, we consider whether the district court erred in concluding that, when assessing at the motion-to-dismiss stage whether a pleading satisfies the heightened pleading requirements of Rule 9(b), a court may ignore allegations solely because they were based on information obtained in discovery. Second, we address whether the district court abused its discretion when it struck Sedona's waiver-request allegations from the second amended complaint.

A.    **The District Court Erroneously Concluded that Sedona's Waiver-request Allegations Could Not Satisfy Rule 9(b) Solely Because They Were Based on Discovery Material.**

Under Federal Rule of Civil Procedure 8(a)(2)'s liberal pleading standard, "[a] complaint must contain 'a short and plain statement' of the claim." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337 (11th Cir. 2024) (quoting Fed. R. Civ. P. 8(a)(2)). But a party alleging "fraud or mistake" must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard to survive a motion to dismiss. *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1358–59 (11th Cir. 2023). Under Rule 9(b), a "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In the second amended complaint, Sedona alleged that the defendants violated the FCA by presenting false claims and making or using false statements in connection with a scheme to defraud the federal government's program for shipping relocated federal employees' personal goods. Under the FCA, any person who

"(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "(B) knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim" incurs liability to the United States. 31 U.S.C. § 3729(a)(1)(A), (B). In addition to creating a cause of action in the United States's favor, the FCA allows a person, known as a relator, to "bring a civil action for a[n] [FCA violation] for the person and for the United States Government." *Id.* § 3730(b)(1). Thus, a relator "pursues the government's claim against the defendant, and asserts the injury in fact suffered by the government." *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1086 (11th Cir. 2018) (internal quotation marks omitted), *aff'd*, 587 U.S. 262 (2019).

Because FCA claims sound in fraud, relators alleging FCA violations must satisfy Rule 9(b)'s particularity requirement. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 n.6 (2016) (explaining that relators must plead their claims in FCA suits "with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)"); *see also 84Partners*, 79 F.4th at 1360 (explaining that "Rule 9(b) applies to False Claims Act allegations"). To satisfy Rule 9(b), a relator's FCA complaint must "set[] forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1306–07 (11th Cir. 2024) (internal quotation marks omitted). We have also interpreted "particularity" to mean that relators must "provide some indicia of

reliability to support the allegation of an actual false claim for payment being made to the [g]overnment." *Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 861 (11th Cir. 2024) (alteration adopted) (emphasis omitted) (internal quotation marks omitted). So Sedona must meet this standard to survive the defendants' motion to dismiss.

The question we face here is whether the district court, in applying Rule 9(b) to Sedona's claims, could consider allegations based on information gleaned from the material Sedona obtained in discovery. The defendants argue on appeal that the district court correctly concluded, consistent with our unpublished decision in *Bingham*, that when deciding whether Sedona satisfied Rule 9(b)'s particularity requirement the court could not consider Sedona's waiver-request allegations that were derived from discovery material. In support, the defendants contend that their position best comports with the purposes of Rule 9(b), "including protecting a defendant's reputation and discouraging unsubstantiated windfalls to a plaintiff." Appellees' Br. 19. According to the defendants, Rule 9(b) would be nullified if relators were allowed to rehabilitate their deficient FCA claims with information learned from discovery. Likewise, the defendants argue that we should affirm because our binding precedent emphasizes the need for relators to satisfy Rule 9(b)'s particularity requirement before discovery begins.

These arguments are unavailing. *Bingham* is not binding on us, and we do not find it persuasive because, as we explain next, Rule 9(b) does not prohibit pleaders from using, or courts from

considering, allegations based on information obtained during discovery.[5] Further, the Supreme Court has admonished courts to avoid supplementing the Federal Rules of Civil Procedure or adding pleading requirements on a case-by-case basis. Thus, Rule 9(b)'s text controls our decision here; it cannot be superseded by the rule's purpose. And the other cases the defendants cite, though binding, are distinguishable because those cases speak to a district court's ability to dismiss a complaint under Rule 9(b) before discovery begins. They say nothing about what materials a district court may consider at the motion to dismiss stage once discovery begins.

When interpreting a Federal Rule of Civil Procedure, "[w]e begin, as always, with the Rule's text." *In re Bailey*, 90 F.4th 1158, 1168 (11th Cir. 2024). In performing this analysis, we "give the Federal Rules of Civil Procedure their plain meaning." *City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1038 (11th Cir. 2023) (internal quotation marks omitted).

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That is all. There is no restriction on the source of the information that may be used to satisfy the rule. To the contrary, the Federal Rules of Civil Procedure permit a party to amend its pleadings to reflect information gained from

---

[5] Because *Bingham* is unpublished, we are not bound to follow it. *See McCreight v. AuburnBank*, 117 F.4th 1322, 1337 n.11 (11th Cir. 2024) (explaining that "unpublished cases are not precedential and they bind no one" (internal quotation marks omitted)).

any source, so long as amendment is otherwise proper under Rule 15. *See 6 Wright & Miller's Federal Practice & Procedure* § 1488 (3d ed. May 2025 update) ("The policy of allowing amendments to be made at any time during the litigation is sound. It would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after *discovery* has been completed or testimony has been taken at trial." (emphasis added)). It is axiomatic that when interpreting Rule 9(b) or any individual rule, we must consider its context within the Federal Rules of Civil Procedure as a whole.

To adopt the defendants' interpretation of the particularity requirement, we would have to supplement the rule's plain meaning with a restriction—specific to *qui tam* relators or not—based on their view of the rule's purpose. But we will not read into the rule language that does not appear there. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1360 (11th Cir. 2018) (declining to interpret a Federal Rule of Civil Procedure to add a pleading requirement where "[n]either the federal nor Florida rules of civil procedure require such statements in the pleadings").

And adding such a pleading requirement would conflict with the Supreme Court's warnings to federal courts to abstain from supplementing the Federal Rules of Civil Procedure. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 167 (1993) (rejecting the district court's imposition of a "heightened pleading standard" that was in effect "a more demanding rule for pleading a complaint under § 1983 than for pleading

other kinds of claims for relief"). Likewise, it would contravene the Supreme Court's instruction to avoid adding pleading requirements on a case-by-case basis. *See Hill v. McDonough*, 547 U.S. 573, 582 (2006) ("Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts."); *Jones v. Bock*, 549 U.S. 199, 224 (2007) (explaining that "more onerous pleading rules" should be adopted "through established rulemaking procedures, and not on a case-by-case basis by the courts").

The defendants' argument that relators may not satisfy Rule 9(b) with allegations obtained from discovery—unlike all other plaintiffs—is precisely the type of "case-by-case" determination adopting a "more onerous pleading rule[]" that the Supreme Court has cautioned us to avoid. *Bock*, 549 U.S. at 224. The Supreme Court may promulgate for Congress's approval an amendment to Rule 9(b) that adds language comporting with the defendants' interpretation of Rule 9(b). But until that happens, relators face the same pleading standard as all other plaintiffs alleging fraud under Rule 9(b).

The defendants resist this conclusion, contending that, like the district court, we should follow the reasoning of *Bingham* because its conclusion that courts may refuse to consider, at the motion to dismiss stage, a relator's allegations solely because they were based on discovery responses is consistent with Rule 9(b)'s purposes and our binding precedent. Again, because *Bingham* is an unpublished decision, we consider its persuasive value only.

Relator Thomas Bingham brought a *qui tam* action under the FCA alleging that HCA, Inc., a healthcare services provider, defrauded the federal government. *Bingham*, 783 F. App'x at 870. HCA responded by filing a motion to dismiss Bingham's amended complaint for failure to state a claim under Rule 12(b)(6). *Id.* at 872. While the motion to dismiss was pending, both parties filed a joint motion to stay discovery until the court ruled on the motion. *Id.* The district court denied the motion to stay discovery, and discovery began while the motion to dismiss remained pending. *Id.*

After the district court granted the motion to dismiss some of the claims without prejudice, Bingham filed a second amended complaint, alleging new facts that he learned during discovery, and HCA moved to strike Bingham's discovery-based allegations under Rule 12(f). *Id.* The district court granted the motion to strike and dismissed Bingham's claims. *Id.* The district court explained that Bingham "impermissibly used information learned through discovery to supplement these allegations, and that without this additional information, the [second amended complaint] did not meet the heightened pleading standard of Rule 9(b)." *Id.* at 875 (alterations adopted) (internal quotation marks omitted).

On appeal, a panel of this Court affirmed the district court's dismissal order. *Id.* According to the panel, "amendments that include material obtained during discovery, prior to a final decision on the motion to dismiss, may not be appropriate in cases to which the height[en]ed pleading standard of Rule 9(b) applies if the amendment would allow the plaintiff to circumvent the purpose of

Rule 9(b)." *Id.* at 876. The panel reasoned that the purposes of Rule 9(b) and the FCA supported this conclusion. It explained that "prohibiting a relator to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs." *Id.* (internal quotation marks omitted). This conclusion, the panel continued, "ensures that the relator's strong financial incentive to bring a False Claims Act claim . . . does not precipitate the filing of frivolous suits." *Id.* (alteration adopted) (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006)).

The defendants argue that *Bingham* is persuasive authority because its holding furthers Rule 9(b)'s purposes of "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted). In the defendants' view, "[a]llowing a relator to circumvent [Rule 9(b)'s] requirements by filing a defective FCA claim and then filling in the details based on document[s] obtained during compulsory discovery, as [Sedona] did, would render Rule 9(b) a nullity in FCA cases." Appellees' Br. 21.

The problem for the defendants, however, is that "policy arguments cannot supersede the clear . . . text" of the rule. *Universal Health Servs.*, 579 U.S. at 192; *see also Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) (declining to supplement a statute's text with

language comporting with the statute's purposes because "even the most formidable argument concerning the statute's purposes could not overcome the clarity [the Court] f[ou]nd in the statute's text"). As we explain above, Rule 9(b)'s text does not treat relators differently from any other plaintiff alleging fraud. Nor does the rule refer to discovery or a party's ability to amend under Rule 15. Thus, we decline to "supersede the clear . . . text" of Rule 9(b) by supplementing it with the defendants' proposed requirement. *Universal Health Servs.*, 579 U.S. at 192.

Lastly, the defendants argue that our reading of Rule 9(b) would contravene binding precedent. In support, the defendants point to two cases, *Clausen* and *Atkins*, where we emphasized the need for relators to satisfy Rule 9(b)'s particularity requirement before discovery begins. The defendants misread these cases: neither case bars a court's consideration of a relator's discovery-based allegations once discovery has begun.

In the first case, *Clausen*, we affirmed the district court's dismissal of a relator's complaint before discovery began, explaining that the relator "fail[ed] to allege with any specificity . . . [that] any actual improper claims were submitted to the [g]overnment." 290 F.3d at 1312. In affirming, we observed that defendants may suffer unnecessary harm when relators get to begin discovery without first alleging their claims with sufficient particularity. *See id.* at 1313 n.24 (explaining that "[w]hen a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may

needlessly harm a defendants' [sic] goodwill and reputation"). But we said only that defendants "may" suffer harm, and we did not say that district courts *must* decide a motion to dismiss before discovery begins. Instead, we said that the district court did not abuse its discretion in deciding to dismiss the complaint before discovery. Likewise, in the second case, *Atkins*, we affirmed a district court's prediscovery dismissal of a relator's complaint for failure to satisfy Rule 9(b). *See* 470 F.3d at 1350. We reasoned that "[t]he particularity requirement of Rule 9 is a nullity if [a relator] gets a ticket to the discovery process without identifying a single claim." *Id*. at 1359 (internal quotation marks omitted). We therefore had no occasion to address a district court's dismissal of a relator's amended complaint that included allegations informed by discovery.

These cases do not conflict with our decision today. We hold that a district court has the discretion to dismiss a relator's complaint before or once discovery has begun, but it may not disregard a relator's allegations solely because those allegations were obtained in discovery.[6] Thus, the district court here erred when it disregarded Sedona's waiver-request allegations solely for that reason.

---

[6] We recently cited with approval another circuit's instruction "that a court should 'hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied'" that the following conditions are present: "'(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts.'" *Gose*, 109 F.4th at 1318 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). In *Gose*, we explained

We turn now to whether the district court abused its discretion when it struck under Rule 12(f) Sedona's discovery-based allegations in the second amended complaint.

## B.    The District Court Abused Its Discretion When It Struck Under Rule 12(f) Sedona's Discovery-based Allegations.

Under Rule 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Even when allegations fall into one of the listed descriptions of matter that may be struck, a Rule 12(f) motion "should be granted only when the pleading to be stricken has no possible relation to the controversy" because Rule 12(f) "is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir.

---

that when district courts ensure that relators have substantial prediscovery evidence of their allegations before beginning discovery, defendants are protected from insufficient claims at a lawsuit's outset. *See id*. at 1318 n.26 ("Requiring plaintiffs to have substantial prediscovery evidence of those facts prevents plaintiffs from learning the complaint's bare essentials through discovery and needlessly harming a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." (alterations adopted) (internal quotation marks omitted)). We reversed the district court's dismissal of the relators' complaint because, in part, the relators had substantial prediscovery evidence of their allegations "as shown by the detailed complaint and accompanying exhibits." *Id*. at 1319. Like *Atkins* and *Clausen*, *Gose* concerned prediscovery dismissal and said nothing about a relator's ability to survive a Rule 9(b) challenge using discovery material.

1962) (internal quotation marks omitted)[7]; *see also* 5C *Wright & Miller's Federal Practice & Procedure* § 1380 (3d ed. May 2025 update) (explaining that "motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted"; the moving party must show "that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party" (footnotes omitted)).

Sedona contends that the district court abused its discretion in striking its waiver-request allegations because Rule 12(f) does not authorize the striking of a complaint's allegations solely because they were based on information obtained in discovery.

We agree. The district court did not consider the applicability of Rule 12(f), including its description of material that may be struck. Instead, the court granted the defendants' motion to strike without any further analysis after concluding that Rule 9(b) barred the court's consideration of the discovery-based allegations. This error is understandable—the *Bingham* panel similarly failed to analyze whether Rule 12(f) permitted the district court to strike the relator's discovery-based allegations after concluding those

---

[7] This Court adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

allegations could not be used to satisfy Rule 9(b)'s particularity requirement.

Given our holding that Rule 9(b) does not bar district courts from considering a relator's allegations based on information obtained in discovery when the court is deciding a motion to dismiss after discovery has begun, the district court had no basis under Rule 12(f) to conclude the allegations were "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Thus, the district court abused its discretion by incorrectly applying Rule 12(f) when it struck allegations from Sedona's second amended complaint without a basis under the rule to do so. *See Savoia-McHugh*, 95 F.4th at 1342.[8]

---

[8] The defendants argue on appeal that the district court used its inherent power—instead of Rule 12(f)—to strike Sedona's discovery-based allegations. The record belies this assertion. The district court's order striking Sedona's waiver-request allegations makes no reference to the court's inherent power to strike pleadings. Instead, the order expressly refers to Rule 12(f). *See* Doc. 265 at 11 (noting the defendants' argument that "the striking of allegations is warranted considering *Bingham* and Fed. R. Civ. P. 12(f), which permits the striking of allegations that are 'an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter'" (quoting Fed. R. Civ. P. 12(f)).

But even if the district court exercised its inherent authority to strike the allegations, we would reach the same result. We have explained that a district court has the inherent power to strike a pleading so that it can "enforce its orders and ensure prompt disposition of legal actions." *Hartline*, 693 F.2d at 1352. We review a district court's decision to use its inherent power to strike a pleading for abuse of discretion. *Id.* ("An appellate court reviewing the exercise of [the inherent power to strike a pleading] is constrained by the abuse of

The defendants argue that we nevertheless should affirm the district court's dismissal of the second amended complaint on the alternative grounds raised in their motion to dismiss, including that (1) the allegations in the second amended complaint, including the allegations based on information obtained in discovery, failed to identify fraud with sufficient particularity, and (2) for the make-or-use claim, the allegations in the second amended complaint failed to allege that the defendants knew the claims were false. Because the district court never reached these issues, we think the better course is to return these issues to the district court so that it may address them in the first instance. *See Olhausen*, 124 F.4th at 859. And should the district court again find the complaint lacking, the court should reconsider Sedona's motion for leave to file a third amended complaint, which the court denied as futile because Sedona's waiver-request allegations were derived from discovery materials.

## IV.    CONCLUSION

We reverse the district court's striking of Sedona's allegations derived from materials obtained in discovery, vacate the district court's order dismissing Sedona's second amended complaint, and remand for further proceedings consistent with this opinion.

---

discretion standard."). The district court's decision to strike allegations from the second amended complaint was based on its conclusion that it could ignore the allegations informed by discovery. Given our ruling that this conclusion was an error of law, the district court abused its discretion regardless of the source of its authority. *Savoia-McHugh*, 95 F.4th at 1342.

26                    Opinion of the Court                    22-13340

**REVERSED, VACATED, and REMANDED.**